UNITED STATES of America, Appellee,

v.

Edward T. SMITH, Jr.,
Defendant, Appellant.

No. 90–1751.

United States Court of Appeals,
First Circuit.

Heard Feb. 5, 1991.
Decided July 16, 1991.

Stanley E. Greenidge, Federal Defender Office, Boston, Mass., for appellant.

Stephen A. Higginson, Asst. U.S. Atty., Washington, D.C., with whom Wayne A. Budd, U.S. Atty., was on brief, Boston, Mass., for U.S.

Before BREYER, Chief Judge, and CAMPBELL and TORRUELLA, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Edward T. Smith appeals from his conviction in United States District Court for the District of Massachusetts of unlawful possession of firearms in violation of 18 U.S.C. § 922(g). He argues that the district court's rulings, excluding evidence of a meeting he had three years before trial with an agent, Robert Nowd, of the Bureau of Alcohol, Tobacco and Firearms ("ATF"), constitute reversible error. Finding no error, we affirm the judgment of the district court.

## I.

On April 6, 1989, Massachusetts law enforcement officers and members of the Lynn Vice Squad Unit obtained and executed a warrant to search Smith's residence in Lynn, Massachusetts. The officers seized four rifles from a closet on the second floor of the house. Further search revealed a loaded, semiautomatic pistol beneath the drawers of a cabinet in the rear of the house. Smith was indicted on February 12, 1990 for unlawful possession of these weapons in violation of 18 U.S.C. § 922(g), which criminalizes the possession of firearms by a convicted felon.[1] After a two-day jury trial, he was convicted on July 18, 1990. At the time of Smith's arrest, his criminal record included a felony narcotics conviction in 1985 and a firearms conviction in 1988, the latter under 18 U.S.C. § 1202(a), a predecessor to § 922(g), which also criminalized the possession of guns by a felon. Smith was sentenced to three years probation for this prior firearms offense, which involved the transfer of a sawed-off .22 caliber Ruger rifle with an

---

1. 18 U.S.C. § 922(g) provides, in pertinent part: "It shall be unlawful for any person—(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

obliterated serial number and a banana clip.

In this appeal Smith challenges the court's exclusion of evidence concerning his meeting on March 20, 1987 with Special Agent Robert Nowd. At the time of the meeting, Smith was under investigation for the first firearms offense. At Agent Nowd's request, Smith met with Nowd to discuss his possible cooperation with ATF. Asserting that at the March 20, 1987 meeting Agent Nowd had authorized him to possess firearms, Smith advised the court prior to trial in the presently appealed action that he intended to present evidence of the 1987 meeting. In order to determine its admissibility, the district court held an evidentiary hearing immediately prior to commencement of the trial. At this preliminary hearing, the defendant presented one witness, Special Agent Nowd. Agent Nowd testified that he had met with the defendant on March 20, 1987 to discuss Smith's potential cooperation in the pending firearms investigation. Nowd testified that he told Smith " '[I]f you can help us, you know ... if you do cooperate pending any further investigations we do, your cooperation will be made known to the appropriate authorities at the time of your trial or at your sentencing.' " Although they discussed Smith's gathering information concerning weapons sales, Nowd also testified that he told Smith "[Y]ou're a convicted felon, you can never possess firearms." According to Agent Nowd, Smith never thereafter provided any information, nor did he communicate with Nowd at all following his conviction and sentencing for the 1988 offense.

At the conclusion of Agent Nowd's testimony, the defendant's attorney indicated that he would next call Smith as a witness, but changed his mind when the district court queried whether defendant's testifying might waive his constitutional privilege against self-incrimination. The district court thereupon ruled that, under Fed.R. Evid. 401, the meeting was not relevant and that testimony concerning the meeting would not be admitted at the forthcoming trial. At trial, the defendant took the stand. When his counsel began to question him about the September 20, 1988 firearms conviction and the 1987 meeting with Agent Nowd, the government objected. The court sustained the objection, explaining that counsel would not be permitted "to get into any of this business about his [Smith's] acting in an alleged undercover capacity."

## II.

On appeal, Smith contends that the district court erred in refusing to permit him to elicit testimony from Agent Nowd regarding the March 20, 1987 meeting with defendant. Smith also challenges the court's refusal to allow Smith to testify at trial concerning the same meeting.

Fed.R.Evid. 103(a) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless ... the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." The substance of Agent Nowd's testimony was made known to the court at the hearing preliminary to trial. However, Smith himself elected not to testify at the preliminary hearing. Nevertheless, even before the preliminary hearing, the district court questioned Smith's attorney regarding the relevance of the 1987 meeting to the charges in this case. Smith's attorney responded that, at that meeting, Agent Nowd told Smith that he "wanted [Smith] to work." He stated that Smith told Nowd " 'I have other weapons at home. I have long guns and other weapons at home, should I give them to you?' " According to defense counsel, Nowd told Smith to " 'keep them, because that's how essentially you're going to get around to the gun clubs, because I want you to investigate the people at the gun clubs.' " Counsel later represented to the court that Smith was "being told on one hand, continue what you're doing to find out information, and yet he's being told on the other hand, X Y Z." It was because of these representations by counsel that the district court held a preliminary hearing to delve into the relevance of testimony concerning what transpired at the 1987 meeting.

At the preliminary hearing, after first indicating he would call Smith to the stand, defense counsel decided not to do so after the court asked to what extent Smith might waive his privilege against self-incrimination were he to testify then. Without pursuing the privilege issue, counsel withdrew his offer of Smith's testimony. The court then ruled that it would not allow evidence at trial about the March 20, 1987 encounter. At trial, the defendant took the stand; when his attorney sought to question him about Agent Nowd, the government objected. The court sustained the objection, telling Smith's attorney not to "get[ ] into matters I have ruled out.... Your rights are saved in this regard." Defense counsel made no further offer of proof.

■ Had Smith testified at the preliminary hearing, his testimony might have been used against him for impeachment purposes at trial. But by testifying at that pretrial stage, he would not have waived his Fifth Amendment privilege not to testify at trial. Fed.R.Evid. 104(d). *See Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *McGautha v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), *vacated and remanded on other grounds*, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972). Nevertheless, it was Smith's option whether to testify at the closed preliminary hearing; and as Smith chose not to testify, it was left to his counsel to show by means of an offer of proof the substance of the matters to which his client would testify concerning the March 20, 1987 meeting. Here, defense counsel did not make a formal nor any extensive offer of proof, but counsel did describe to the court the gist of the meeting, as Smith saw it, *supra*. We believe that counsel's representations were sufficient under Rule 103(a) to preserve for consideration on appeal the materiality of the excluded matters. *See, e.g., United States v. Peak*, 856 F.2d 825, 832 (7th Cir.), *cert. denied*, 488 U.S. 969, 109 S.Ct. 499, 102 L.Ed.2d 535 (1988) (holding that court had sufficient information to review evidentiary ruling where declarant's counsel offered a brief summary of what the witness would have said on the stand). Thus, as-

suming Smith would have testified along the lines his counsel suggested, we now examine the correctness of the district court's ruling excluding, on grounds of lack of relevance, Smith's testimony concerning the March 20, 1987 meeting.

■ Fed.R.Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action any more probable or less probable than it would be without the evidence." In reviewing the district court's rulings under Rule 401, we consider the relationship of the evidence sought to be admitted to the elements of the offense and to relevant defenses offered by Smith. Smith argues that his proposed testimony relating to the March 20, 1987 meeting was relevant to show the jury that he lacked the level of intent required under the criminal statute or, alternatively, that Agent Nowd misled him as to the legality of his conduct in violation of his due process rights. We address separately each of these arguments.

■ This court, and indeed every court to have considered the issue, has held that "ignorance of the law" is not a defense in prosecutions for violations of the federal firearms laws. *See, e.g., United States v. Currier*, 621 F.2d 7 (1st Cir.1980) (citing cases). Under established case law, the government need not prove that the defendant knowingly violated the law; rather, it only need prove, which it did here, that the defendant knowingly possessed firearms. Thus, in evaluating the relevance of the defendant's meeting with Agent Nowd to the issue of intent, we must focus on the relationship of such testimony to the defendant's state of mind, to the extent it is relevant under the statute. Based on defense counsel's characterization, that evidence would have tended to show that Smith left the meeting with Agent Nowd believing that Nowd had authorized him to keep the firearms in order to enter the gun clubs and facilite his investigation. Smith argues from this that a jury might find that he had mistakenly believed he could legally possess firearms, notwithstanding the fact that he was a convicted felon. We

note that counsel nowhere suggested that Smith would testify that Agent Nowd actually told Smith that possession was legal—merely that he, Nowd, wanted Smith to keep the guns for the described purposes. Even assuming, however, that Nowd's purported encouragement to keep his guns could have misled Smith to believe that possession was legal, Smith's personal belief as to the legality of his conduct was irrelevant under the statute. The government need only prove that Smith knew he possessed the firearms, not that he understood that such possession was illegal. Thus, to the extent that the testimony was offered to show that the defendant lacked the requisite intent under 18 U.S.C. § 922(g), the testimony of both Agent Nowd and the defendant concerning their 1987 meeting was properly excluded as immaterial.

The defendant's due process theory, offered as an affirmative defense, presents a more complex question, requiring us to focus on the conduct of the government official rather than on the state of mind of the defendant. In effect, Smith argues that Agent Nowd's "outrageous conduct" in authorizing Smith's possession of firearms in 1987 should preclude Smith's prosecution for possessing guns in 1989. To prosecute him for such possession, he insists, would violate his due process rights under the United States Constitution.

▇ There are two due process concepts to which defendant's arguments might be germane. The first, sometimes labelled "entrapment by estoppel," see, e.g., United States v. Tallmadge, 829 F.2d 767, 773 (9th Cir.1987), is a theory that several circuits and the Supreme Court have recognized as applicable under certain, relatively narrow, circumstances. See Cox v. Louisiana, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965); Raley v. Ohio, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959); United States v. Hedges, 912 F.2d 1397 (11th Cir. 1990); United States v. Clegg, 846 F.2d 1221 (9th Cir.1988). Entrapment by estoppel has been held to apply when an official assures a defendant that certain conduct is legal,[2] and the defendant reasonably relies on that advice and continues or initiates the conduct. The underlying concept is that, under certain circumstances, an individual may be entitled reasonably to rely on the representations of an authorized government official as to the legality of his conduct. Unlike defendant's previous contention that the agent's advice caused him to lack criminal intent, entrapment by estoppel rests upon principles of fairness, not defendant's mental state. The defense may, therefore, be raised in cases like this in which the offense has no requirement of specific intent. See United States v. Hedges, 912 F.2d at 1405.

▇ The defense of entrapment by estoppel is predicated upon fundamental notions of fairness embodied in the Fifth Amendment's due process clause. Whether the prosecution of a defendant violates his due process rights depends not solely upon whether he was incorrectly informed or misled by a government official, but upon the totality of the circumstances surrounding the prosecution. For example, in United States v. Tallmadge, uncontradicted evidence established that the defendant received and possessed firearms in reliance on the representation of a federally-licensed gun dealer that a person convicted of a felony could legally possess guns if the offense subsequently had been reduced to a misdemeanor. 829 F.2d at 774. In that case, the defendant also sought advice from his attorney who informed him that his possession of firearms was legal. Id. at 775. Furthermore, the defendant's incorrect belief was reinforced by comments of the state trial judge and the district attorney at Tallmadge's probation termination proceedings. Id. Under the circumstances, the Ninth Circuit believed that the prosecution of Tallmadge for the receipt and possession of firearms violated due process.[3]

---

**2.** As already noted, in describing Smith's projected testimony, counsel never indicated, in so many words, that Agent Nowd told him that possession would be legal—only that Nowd wanted him to keep the guns to help with the investigation.

**3.** By reciting the facts of *Tallmadge* and related cases, we do not mean to indicate that we neces-

■ In evaluating the relevance of Smith's proposed testimony to a viable entrapment by estoppel defense, we must ask whether Smith was advised by a government official that the act was legal, whether Smith relied on that advice, whether that reliance was reasonable, and whether, given that reliance, prosecution of the defendant would be unfair. Evaluating the proffered testimony in light of this standard, we do not believe that Agent Nowd's purported assurances reflected in Smith's proposed testimony would permit a finding of entrapment by estoppel.[4] Unlike the defendant in *Tallmadge*, who received a consistently misleading message from several sources, Smith received, at most, conflicting indications about his possession of firearms. On the one hand, Smith plainly knew that, as a convicted felon, his possession of firearms was illegal: by the time of the meeting with Agent Nowd, Smith was under investigation for precisely such a firearms offense. On the other hand, defense counsel characterized Agent Nowd's statements (as represented by Smith) as sending a "mixed message"—both that Smith could not legally possess the weapons and that he should keep them to facilitate his information-gathering for the government. Nowd was never alleged, even by Smith's counsel, to have represented that keeping the guns was, in fact, *legal*. We find that the "mixed message" could not reasonably have invited Smith's reliance and, therefore, would not have justified a finding of entrapment by estoppel.

■ It should also be remembered that the search of Smith's home revealing the weapons at issue in the present case did not occur until April 6, 1989—over six months after he was sentenced following his conviction on the earlier firearms count. Even if Smith had relied on Nowd's alleged authorization during the period preceding his 1988 trial and conviction for the earlier firearms offense, he could not have reasonably relied on that authorization for his continued possession of firearms following that conviction and sentence. By the time the firearms which were the subject of the present trial were discovered on April 6, 1989, any period of cooperation with the government arising from the March 20, 1987 meeting must have ended. Having been tried, convicted, and sentenced in 1988, Smith had nothing to gain, insofar as this record suggests, from continued "cooperation." Smith proffered no testimony to contradict Agent Nowd's testimony that Smith had provided no information following the meeting nor communicated with Nowd following his sentencing in 1988. There was no offer of proof of any agreement that Smith would continue to cooperate with ATF after his 1988 conviction. We conclude that Smith's proposed testimony about the October 20, 1987 meeting was not material to any viable theory of entrapment by estoppel relevant to the present case.

■ Smith offers a second due process argument supporting the relevance of the excluded evidence. Citing *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), Smith argues that this case is one in which the government's conduct was "so outrageous that due process principles [ ] absolutely bar the government from invoking judicial process to obtain a conviction." *Id.* at 431–32, 93 S.Ct. at 1642–43. We disagree. *Russell* and its progeny, *see Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Luttrell*, 889 F.2d 806 (9th Cir.1989), *vacated in part and amended on reh'g*, 923 F.2d 764 (9th Cir. 1991); *United States v. Twigg*, 588 F.2d 373 (3d Cir.1978), concern undercover operations in which the government was "overinvolved" in the criminal conduct such that it effectively engineered the criminal enterprise. This is not such a case. Smith was not the target of an undercover operation; rather, according to defense counsel, he was recruited to participate in informa-

---

sarily agree with the court's analysis and holding therein.

**4.** We realize, of course, that Agent Nowd's own testimony concerning the meeting was that he told Smith that, as a convicted felon, he could *never* possess firearms. For present purposes, we focus solely on Smith's contrary version.

**716**

tion-gathering activities. Under the circumstances, Smith had every opportunity to protect his interests by seeking clarification of the "mixed message" he allegedly received from Agent Nowd. Although Agent Nowd's request for information may have been ambiguous, his conduct in enlisting the cooperation of defendant Smith did not rise to the level of "outrageousness" required to support a due process violation. *See, e.g., Hampton,* 425 U.S. 484, 96 S.Ct. 1646 (1976) (holding that prosecution of defendant who both purchased drugs from and sold them to government agents did not violate due process); *United States v. Porter,* 764 F.2d 1 (1st Cir.1985) (holding that government agent's repeated and allegedly threatening phone calls encouraging defendant to locate buyers for cocaine did not violate due process), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987); *United States v. Rodriguez–Ramos,* 704 F.2d 17, 22 (1st Cir.) (rejecting due process defense and noting that "cases finding government involvement so pervasive or outrageous as to violate due process have indeed been rare"), *cert. denied,* 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983).

## III.

Having rejected both Smith's theory of "mistake" and his due process defense as inapplicable, we conclude that the district court properly excluded, as being irrelevant, the testimony concerning the meeting between Nowd and Smith in March of 1987.

*Affirmed.*