USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-1482

 UNITED STATES,

 Appellee,

 v.

 BOYD VANCE ELLIS,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Morton A. Brody, U.S. District Judge]

 Before

 Selya, Circuit Judge,
 Cudahy,* Senior Circuit Judge,
 and Stahl, Circuit Judge.
 
 

 Jeffrey M. Silverstein with whom Billings & Silverstein was on
brief for appellant.
 Margaret D. McGaughey, Assistant United States Attorney, with
whom Jay P. McCloskey, United States Attorney, and Michael Love,
Assistant United States Attorney, were on brief for appellee.

February 26, 1999

 
 
_____________________
*Of the Seventh Circuit, sitting by designation. STAHL, Circuit Judge. Defendant-appellant Boyd Ellis
challenges certain aspects of his trial and sentencing after his
conviction on firearms possession and marijuana cultivation
charges. We affirm Ellis's conviction, but vacate the sentence and
remand to the district court for resentencing.
 I. Facts
 Acting on information supplied by various confidential
informants, as well as on limited corroborative police
investigation, state and federal agents obtained a search warrant
for Ellis's home and attached property. The agents located
approximately sixty-five marijuana plants in a secret compartment
in a detached garage. From various locations on the property, the
agents also recovered ammunition of various types, some of which
did not fit any of the weapons found on the premises. The search
also discovered a shotgun and a handgun hidden in a bureau in
Ellis's bedroom. Two additional weapons were recovered from the
kitchen and garage, but Ellis was not charged with their
possession.
 Ellis was indicted for (1) knowing possession of an
unregistered shotgun, see 26 U.S.C. 5861(d), 5871; (2) being a
felon in knowing possession of the shotgun, the revolver, or the
ammunition, see 18 U.S.C. 922(g)(1); and (3) cultivating
marijuana, see 21 U.S.C. 841(a)(1), 841(b)(1)(C). 
 At a jury trial, Ellis admitted his role in the marijuana
cultivation in opening argument and again during his own testimony. 
Ellis contested only the intent element of his firearms
convictions. He sought to introduce evidence that in 1991, during
a prior search of his property by agents of the Maine Bureau of
Intergovernmental Drug Enforcement (BIDE), Ellis, a prior convicted
felon, had inquired about the legality of the ammunition he then
possessed. Ellis testified that a BIDE officer told him he would
get back to him about the issue. No one ever did. Ellis sought to
testify that, on the basis of this failure to get back to him, he
reasonably concluded that the possession of the ammunition was
legal, notwithstanding his status as a convicted felon. The court
refused to admit this evidence of -- or to instruct the jury on --
the defense of entrapment by estoppel. Although Ellis requested
such an instruction at a charge conference, he failed to object
after the instructions were given.
 Also at trial, Ellis requested that a special verdict
form be used in Count II, in order to determine which items
(shotgun, revolver, or ammunition), if any, the jury agreed that he
had knowingly possessed. The government did not oppose the
request, but the district court nevertheless denied it. The jury
convicted Ellis on Counts II and III, but acquitted on Count I.
 At sentencing, the court explicitly found that Ellis had
knowingly possessed the revolver, as well as the uncharged weapons. 
On the basis of prior convictions dating from 1975-1983, and on its
findings regarding the weapons, the district court increased the
base offense level pursuant to the sentencing guidelines provisions
associated with being an armed career criminal, see U.S.S.G. 
4B1.4, which in this case trumped the normal guidelines
calculations. Finally, the court chose the higher of two
potentially applicable armed career criminal base offense levels. 
See U.S.S.G. 4B1.4(b)(3)(A). The level the court selected was
applicable to defendants found to have been in possession of
firearms "in connection with another felony." Id. Ellis was
sentenced to, inter alia, 262 months' imprisonment. 
 II. Trial
 On appeal, Ellis challenges various aspects of his trial
and sentencing. We begin with the trial challenges. First,
Ellis claims the district court erred by excluding evidence of the
1991 search and by refusing to instruct the jury on the defense of
entrapment by estoppel. Second, he contends that the district
court should have granted his request for a special verdict form
for the jury. Neither of these arguments is persuasive.
 A. Entrapment by Estoppel
 We review a district court's decision to exclude evidence
for abuse of discretion. See United States v. Tierney, 760 F.2d
382, 387 (1st Cir. 1985). We review de novo whether a defense is
established as a matter of law. United States v. Caron, 64 F.3d
713, 715 (1st Cir. 1995). We review for plain error a district
court's failure to instruct the jury on a defense, where the
instructions were not the subject of a proper objection at trial.
See Johnson v. United States, 520 U.S. 461, 466 (1997).
 Entrapment by estoppel requires Ellis to establish (1)
that a government official told him the act was legal; (2) that he
relied on the advice; (3) that the reliance was reasonable; and (4)
that, given the reliance, prosecution would be unfair. See United
States v. Smith, 940 F.2d 710, 715 (1st Cir. 1991). 
 We agree with the district court that the evidence Ellis
sought to introduce to establish entrapment by estoppel was
insufficient as a matter of law to permit the jury to find for him
on this point. Ellis's evidence consisted of testimony that in
1991, during a search of his property by BIDE, he inquired about
the legality of the ammunition he possessed. One official
allegedly told Ellis that the official would get back to him. No
one ever did. Ellis testified that he relied on this failure to
get back to him, thus reasonably concluding that the possession of
the ammunition was legal. 
 Ellis failed to show, as required, that anyone with
official status made an affirmative representation that possession
of the ammunition was legal. See id. Because the proffered
evidence was insufficient, the district court was well within its
discretion in excluding the evidence. Obviously, in such
circumstances, there was no plain error in refusing to instruct the
jury on the defense.
 B. Special Verdict Form
 Ellis contends that the district court erred in not
giving the jury a special verdict form regarding Count II. Such a
form would have enabled the district court to determine which, if
any, of the firearms and ammunition the jury found Ellis to have
knowingly possessed. In denying the request, the district court
expressed worry that such a form would encourage the jury to return
with a compromise verdict. According to Ellis, this alleged error
became critical at sentencing, when the district court did not have
the jury's guidance on which, if any, of the charged items it had
found Ellis knowingly possessed.
 This court has not adopted a standard of review on this
issue. At least one other circuit has reviewed the failure to use
a special verdict form for abuse of discretion. See, e.g., United
States v. Reed, 147 F.3d 1178, 1180 (9th Cir. 1998). Noting that
special verdicts in criminal cases are generally disfavored, seeUnited States v. Spock, 416 F.2d 165, 180-83 (1st Cir. 1969), and
following the Ninth Circuit's lead, see Reed, 147 F.3d at 1180, we
adopt this standard. Cf. United States v. Melvin, 27 F.3d 710, 716
(1st Cir. 1994) (holding that trial court may use a special verdict
in cases similar to the one at bar).
 Ellis has not explained how knowing precisely what the
jury found beyond a reasonable doubt would have aided his cause
before the district court at sentencing, where a lower burden of
proof applies, see McMillan v. Pennsylvania, 477 U.S. 79, 91
(1986). In these circumstances, the district court is not bound by
the jury's conclusions (even if they were knowable with the
certainty Ellis ascribes to them). See United States v. Mocciola,
891 F.2d 13, 17 (1st Cir. 1989). In addition, we share the
district court's concern that the special verdict form sought here
might have encouraged a compromise verdict. Cf. Spock, 416 F.2d at
182 (noting danger that juror who may otherwise have wished to
acquit will be led to convict on account of special verdict form). 
Accordingly, we discern no abuse of discretion in the district
court's failing to have used a special verdict form for Count II.
 III. Sentencing
 Ellis raises four arguments in his sentencing appeal. 
First, he claims that the district court made conflicting factual
findings that were not supported by the evidence. Second, he
protests the use of "ancient" convictions to trigger the armed
career criminal enhancement. Third, he contends that the district
court erred by increasing his base offense level for possession of
firearms "in connection with another felony." Finally, he argues
that he was entitled to a base offense level reduction for
acceptance of responsibility. We address these points seriatim.
 A. Factual Findings Regarding the Possession of Firearms
 In order to invoke the guidelines associated with armed
career criminals, the district court found by a preponderance of
the evidence that Ellis knowingly possessed the handgun,
ammunition, and two other uncharged weapons. We review a district
court's factual findings for clear error. See Fed. R. Civ. P.
52(a). Ellis argues that because the shotgun and the handgun were
both found in the same place, logic requires that the district
court find either that Ellis knowingly possessed both, or that he
knowingly possessed neither. Because the district court found only
knowing possession of the handgun, Ellis invites this court to find
clear error. We decline the invitation. 
 First, the court need not have made any finding regarding
the handgun. As Ellis admitted in a presentencing conference, the
armed career criminal guideline to which this finding was relevant
is satisfied by either a firearm or ammunition. See U.S.S.G. 
4B1.4(b)(3)(A). It is uncontested that Ellis knowingly possessed
ammunition. Second, we point out that the district court made no
finding at all regarding the shotgun; rather, the court simply
declined to consider it. Thus, the inconsistency to which Ellis
points does not exist. Finally, even if we were to treat the
district court's failure to consider the shotgun as an implicit
finding that Ellis did not knowingly possess it, a decision to
treat the shotgun and the handgun differently is amply supported by
the evidence. Although both the shotgun and the handgun were
recovered from the bureau, the shotgun was dusty, while the handgun
was clean. The shotgun was old, while the handgun was newer. The
handgun, as opposed to the shotgun, was well-maintained. The
shotgun was in a holster and the handgun was not. In fact, a
holster into which the handgun fit was found in a more accessible
drawer. Most importantly, there was testimony that a shell found
on the premises had actually been fired from the handgun. Based on
these relevant differences, there is no clear error.
 B. Armed Career Criminal Status
 Ellis argues that his prior convictions are too old to
trigger enhancements under the guidelines associated with armed
career criminals. However, he acknowledges that this court has
ruled that the age of such convictions is irrelevant for this
purpose. See United States v. Daniels, 3 F.3d 25, 28 (1st Cir.
1993). Absent circumstances not present here, this panel does not
have the power to overturn that ruling, see Willimas v. Ashland
Engineering Co., 45 F.3d 588, 592 (1st Cir. 1995).
 C. "In Connection With"
 We review the district court's application of a
particular sentencing guideline de novo, see United States v.
Thompson, 32 F.3d 1, 4 (1st Cir. 1994), although factual findings
underlying the application are reviewed only for clear error, seeid.
 Ellis argues that there was an insufficient nexus between
the possession of the firearms and the marijuana cultivation. For
this reason, he argues that the district court erred in using
U.S.S.G. 4B1.4(b)(3)(A) to enhance his offense level for
possession of firearms "in connection with" a controlled substance
offense.
 In this case, the guideline relevant to armed career
criminals controls. See U.S.S.G. 4B1.4(b). In relevant part, it
provides for a base offense level of 34 "if the defendant used or
possessed the firearm or ammunition in connection with a . . .
controlled substance offense." U.S.S.G. 4B1.4(b)(3)(A) (emphasis
added). If not, the applicable level is 33. See U.S.S.G. 
4B1.4(b)(3)(B). In addition, the "in connection with" finding
raises Ellis's criminal history category from I to VI. SeeU.S.S.G. 4B1.4(c)(2). Here, the district court used the 34 base
level and category VI, apparently because it found the requisite
"connection." The district court did not, however, make any
explicit findings on this issue.
 Although the phrase "in connection with" should be
construed broadly, there must exist a causal or logical relation or
sequence between the possession and the related offense. SeeThompson, 32 F.3d at 5. Mere coincidental possession does not
establish the required connection. See id. at 6. However, if the
possession has "the potential to aid or facilitate" the other
crime, that is sufficient. Id.
 Here, the two charged weapons were located in a building
separate from the marijuana operation. They were under a bureau,
in a small room in which, by the government's own admission, it was
difficult to shift furniture. In short, they were largely
inaccessible, which weighs against finding a "connection."
 Nevertheless, the government makes two sets of arguments
 one in its brief and one at oral argument -- which it says would
permit us to affirm the district court's implicit finding of a
"connection." In its brief, the government points to the following
evidence as supporting the district court's conclusion that there
was sufficient evidence to find such a nexus: (1) the fact that 80%
of drug crimes in Maine also involve firearms violations; (2) the
fact that Ellis cultivated his crop hidden from plain view; (3) the
fact that marijuana is worth $2,000 per pound on the street. At
oral argument, the government suggested that the two additional
uncharged weapons found in the garage and kitchen respectively
could support an "in connection with" finding. It also suggested
that the sheer number of weapons on the property (four) supports an
inference of a connection. 
 Combined with the fact that the charged guns and random
ammunition were both inaccessible and nowhere near the marijuana
alleged to be protected by them, the three items of "evidence" to
which the government alludes in its appellate brief are not
sufficient for us to affirm the district court's implicit finding
of a "connection." The first item has nothing to do with Ellis
and, in any event, would always apply, whether possession was
coincidental or not, in derogation of Thompson. The second item
only reflects the fact that marijuana is illegal; it is unclear
what relevance the marijuana's being hidden has to the guns. In
regard to the third item, the government's recitation of the street
value of marijuana adds nothing to the analysis; again, drugs have
significant value on the street even when the firearms possession
is merely coincidental to the drug operation. The third point is
particularly unpersuasive on the facts before us, where the total
amount of marijuana recovered from the cultivation operation --
thirty-six-and-one-half grams -- was worth approximately $160,
using the government's estimate (.0365g X 2.2 lbs./kg X $2000/lb.). 
 The government's suggested "connections" at oral argument
are perhaps marginally more persuasive. In the absence of any
explicit findings by the district court to support the government's
position, however, and in light of the fact that at sentencing the
government specifically declined to provide any evidence with
regard to the additional uncharged weapons, we vacate Ellis's
sentence and remand for resentencing consistent with this opinion.
 D. Acceptance of Responsibility
 Ellis also argues that he was entitled to a two-level
reduction for acceptance of responsibility pursuant to U.S.S.G.
 3E1.1. His acceptance purportedly consisted of his counsel's
admission of Ellis's guilt on the marijuana charge in opening
argument, his own testimony to the same effect, and the fact that
he challenged only the intent element of the firearms charges. The
district court declined to award the reduction. The district
court's reasoning is not entirely clear; it relied on Application
Note 2 to U.S.S.G. 3E1.1. This Note gives, inter alia, examples
of cases where a defendant may elect to go to trial and yet still
receive a reduction for acceptance of responsibility. The
sentencing transcript suggests that it is possible the district
court believed that because Ellis's trial issues were not related
to jurisdiction or constitutionality, the latter of which is an
example offered in Application Note 2, Ellis was not eligible for
the reduction.
 In "rare situations", a defendant may elect to exercise
his right to trial and still be eligible for a reduction under
U.S.S.G. 3E1.1. See Application Note 2. These rare situations
are not limited, however, to jurisdictional and constitutional
matters. See, e.g., U.S.S.G. 3E1.1 Application Note 2 (offering
example of defendant who challenges applicability of a statute to
his conduct); Isabel v. United States, 980 F.2d 60, 65 (1st Cir.
1992) (acknowledging that where a defendant admits his conduct and
denies only that it constitutes money laundering under the relevant
statute, he may be eligible for an acceptance of responsibility
reduction) (dicta); United States v. Barris, 46 F.3d 33, 35 (8th
Cir. 1995) (assertion of insanity defense at trial not an automatic
bar to reduction for acceptance of responsibility). In some cases,
defenses relating to intent may yet qualify for the acceptance of
responsibility reduction. See, e.g., United States v. Fleener, 900
F.2d 914, 918 (6th Cir. 1990) (defendant's going to trial to raise
entrapment defense does not preclude award of reduction for
acceptance of responsibility); but see United States v. Kirkland,
104 F.3d 1403, 1405 (D.C. Cir. 1997) (sharply criticizing Fleenerand holding that intent-based defenses are contests over factual
guilt and thus not qualified for the reduction). In all cases, "a
determination that a defendant has accepted responsibility will be
based primarily upon pre-trial statements and conduct." U.S.S.G.
 3E1.1 Application Note 2 (emphasis added). 
 Although this record indicates that Ellis has an uphill
battle in showing his eligibility for the acceptance of
responsibility credit, cf. United States v. Crass, 50 F.3d 81, 84
(1st Cir. 1995) ("[I]ntent, like any other element of the crime
charged, may not be contested by the defendant without jeopardizing
a downward adjustment for 'acceptance of responsibility'.")
(emphasis in original); United States v. Bennett, 37 F.3d 687, 697
(1st Cir. 1994) (defendant who contested the issue of intent at
trial and only expressed remorse after trial is not eligible for a
reduction for acceptance of responsibility), nonetheless the
district court should determine the matter in the first instance or
at least clarify its prior reasoning for denying the reduction, if
it has occasion to address the issue on resentencing. 
 IV. Conclusion
 Ellis's conviction is affirmed. His sentence is vacated,
and the case remanded to the district court for resentencing.