NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-253

COMMONWEALTH

<u>vs</u>.

EDWARD W. CEFALO.

<u>MEMORANDUM AND ORDER PURSUANT TO RULE 23.0</u>

A jury convicted the defendant, Edward W. Cefalo, of violating a G. L. c. 209A abuse prevention order.  On appeal, the defendant argues that the trial judge's failure to, sua sponte, instruct the jury on the affirmative defense of entrapment by estoppel created a substantial risk of a miscarriage of justice.  The defendant also contends that the Massachusetts entrapment-by-estoppel jurisprudence should be clarified by adopting the United States Court of Appeals for the First Circuit's four-element test.  In addition, the defendant argues that (1) two witnesses improperly testified to their belief that the defendant violated the abuse prevention order, and (2) the judge abused his discretion in not permitting the

defendant to either refresh the memory of or to impeach the testifying victim by playing the audio recording of a telephone call between the victim and a police officer.  We affirm.

Background.  We summarize the evidence presented at trial. On May 22, 2023, the victim obtained a restraining order against the defendant requiring, inter alia, that he stay at least one hundred yards from the victim and her residence until May 20, 2024.  The defendant and victim have a child, Alex.[1]  Alex had a restraining order against the victim.

On June 14, 2023, Alex entered the Peabody police station and spoke with Officer Thomas Southern about receiving a police escort to retrieve some personal belongings from the victim's home.  Officer Southern called the victim to arrange for Alex to pick up some belongings from the house in the presence of the police.  The victim responded that Alex could come to her house, but she stated that she did not want the defendant there. Officer Southern testified that he advised the victim that the defendant was not with the child.  At no point did Officer Southern see the defendant.  Nor had Alex informed Officer Southern that the defendant was present at the station and would be driving Alex to the victim's residence.

---

[1] A pseudonym.

Subsequently, Officer Southern instructed Alex to meet Officer William Thong, who would be escorting him to the victim's house, in a local restaurant's parking lot. Officer Southern relayed, either to dispatch or to Officer Thong directly, that Thong would be "meeting a party at [a restaurant] to preserve the peace while [Alex] gathers some clothes quickly." In the parking lot, the defendant identified himself to Officer Thong, and told him that his child, Alex, needed to gather belongings from the victim's home. The defendant did not volunteer that the victim had an active restraining order that prohibited the defendant from being within one hundred yards of her or her residence. Officer Thong instructed the defendant to "follow [him]," which the defendant subsequently did. At that time, Officer Thong did not know the victim had a restraining order against the defendant. The defendant parked in the victim's driveway behind Officer Thong's vehicle, approximately fifty feet from the house. The victim saw the defendant parked in front of her driveway and informed Officer Thong that she had an active restraining order against the defendant prohibiting him from being near her residence. Officer Thong confirmed the existence and active status of the restraining order. Additional police officers arrived at the house, and the

3

defendant was arrested for violating the restraining order by being within one hundred yards of the victim's residence.

Discussion. 1. Entrapment by estoppel. The defendant argues that the trial judge should have, sua sponte, instructed the jury on the affirmative defense of entrapment by estoppel. Arguing that the controlling cases are insufficiently clear to provide guidance to litigants, the defendant further urges this Court to adopt the four-element test developed by the First Circuit. We are not convinced the circumstances here supported an entrapment by estoppel instruction.

"Once a defendant raises [a] defense to a charge and the defense is supported by sufficient evidence, the defendant is entitled to have a jury instruction on the defense, and the Commonwealth has the burden of disproving the defense." Commonwealth v. Cabral, 443 Mass. 171, 179-180 (2005). The defendant neither raised the applicability of the entrapment by estoppel defense nor requested a jury instruction for the defense in the trial court. We thus review for a substantial risk of a miscarriage of justice. See Commonwealth v. Renderos, 440 Mass. 422, 425 (2003).

"Entrapment by estoppel has been held to apply when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or

4

initiates the conduct."  Commonwealth v. Twitchell, 416 Mass. 114, 128 (1993), quoting United States v. Smith, 940 F.2d 710, 714 (1st Cir. 1991).  "The defense rests on principles of fairness grounded in Federal criminal cases in the due process clause of the Fifth Amendment," and "generally involves factual determinations based on the totality of the circumstances" (citations omitted).  Twitchell, supra.

In Twitchell, 416 Mass. at 129, the Supreme Judicial Court held that the defendants were entitled to present an entrapment by estoppel defense after concluding that the reasonableness of their reliance on an official opinion was a question of fact for the jury.  There, the defendants did not seek medical care for their sick child, relying instead on spiritual treatment in line with their Christian Science beliefs.  Id. at 116.  The child died from his illness, and the parents were ultimately convicted of involuntary manslaughter in connection with the death of their son.  Id. at 115.

For the first time on appeal, defendants argued, in relevant part, that they were entitled to present the entrapment by estoppel defense because a church publication on the legal rights and obligations of Christian Scientists in Massachusetts that quoted, without citation, a portion of the Attorney General's opinion on the spiritual treatment provision of G. L.

5

c. 273, § 1, misled them to believe that they were protected against criminal prosecution by the spiritual treatment provision of § 1. Twitchell, 416 Mass. at 125-127. At trial, the evidence demonstrated that defendants were "seeking to practice their religion within the limits of what they were advised that the law permitted." Id. at 129. Ultimately, "[t]he issue was one that, if presented to them, could well have changed the jury's verdicts." Id. at 129.

Under Twitchell, to be entitled to an entrapment by estoppel defense, the defendant must establish that (1) "an official assure[d] [him] that certain conduct [was] legal" and (2) he "reasonably relie[d] on that advice and continue[d] or initiate[d] the conduct." 416 Mass. at 128. Here, the defendant contends that Officer Thong's direction that he "follow [him]" constituted an assurance that he could drive his child to the victim's home without violating the abuse prevention order. We disagree. The first element of the entrapment by estoppel defense recognized in Twitchell hinges on whether the official made "an official statement of the law" on which the defendant reasonably relied. Twitchell, supra at 129. The defendant must reasonably rely "on the representations of an authorized government official as to the legality of his conduct." Smith, 940 F.2d at 714.

6

Here, Officer Thong's instruction that defendant "follow [him]" to the victim's home did not rise to an official statement of the law. Officer Thong did not have knowledge of the victim's abuse prevention order against the defendant at that point. Neither Officer Southern nor the defendant informed Officer Thong about the order. Without knowledge of the order, Officer Thong's statement that defendant "follow [him]" did not amount to an assurance that the defendant could legally drive to the victim's house without being in violation of his abuse prevention order. See United States v. Lynch, 903 F.3d 1061, 1076 (9th Cir. 2018) (defendant "never received the sort of clear sanction that entrapment by estoppel requires" where official never told defendant proposed activities were legal). Had Officer Thong told the defendant, "Follow me and you will not be in violation," we might have a different case. However, those are not the facts before us.

In addition, based on the evidence presented at trial, no rational jury could have found that the defendant's reliance (if any) on Officer Thong's statement was reasonable. Alex, not the defendant, entered the Peabody police station and asked Officer Southern for a police escort to the victim's home because of his own restraining order on the victim. The defendant did not enter the station, and Alex did not inform Officer Southern that

7

his father would be the one driving him to the victim's home. Officer Thong learned either directly from Officer Southern or from dispatch only that he was to meet the child "to preserve the peace" while he grabbed items from his mother's home.

At the meeting place, the defendant identified himself and explained that his child Alex needed to pick up some items from his mother's home. Although the defendant did not try to hide his identity from Officer Thong, at no point did he alert Officer Thong to the existence of his active abuse prevention order. There was no evidence that the defendant relied on Thong's statement as an explicit assurance that that defendant's conduct in following Thong would not place him in violation of the victim's order. It was not reasonable for the defendant to assume that Officer Thong, after hearing the defendant's name, would have checked if he had any active abuse prevention orders. Nor was it reasonable for the defendant to assume that Officer Southern's knowledge of the abuse prevention order was conveyed to Officer Thong when neither the defendant nor Alex alerted Officer Southern that the defendant would be accompanying Alex to the victim's house. See Smith, 940 F.2d at 715. See also United States v. Tallmadge, 829 F.2d 767, 774 (9th Cir. 1987) ("to establish the defense of official misleading, the defendant must establish that his reliance on the misleading information

8

was reasonable," meaning "that a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries" [quotation and citation omitted]).

The defendant argues that entrapment by estoppel is not a well-developed affirmative defense in Massachusetts. See Twitchell, 416 Mass. at 128. Consequently, the defendant asks this court to clarify the defense of entrapment by estoppel by adopting the First Circuit's four-element test: (1) the defendant "was advised by a government official that the act was legal," (2) the defendant "relied on that advice," (3) the defendant's reliance was reasonable, and (4) "given that reliance, prosecution of the defendant would be unfair."[2] Smith, 940 F.2d at 715.

Even if we were to assume, arguendo, that the First Circuit test applied, the defendant cannot establish that he was entitled to an entrapment by estoppel instruction. We have already addressed the first three elements of the First Circuit test pursuant to our analysis under Twitchell, so we will only briefly touch on the fourth. Entrapment by estoppel "rests upon

---

[2] We note that in Twitchell, the Supreme Judicial Court cited Smith but did not adopt the First Circuit's test for entrapment by estoppel. See Twitchell, 416 Mass. at 128, citing Smith, 940 F.2d at 714-715.

9

principles of fairness," and we assess whether the prosecution violated "fundamental notions of fairness" based on the totality of the circumstances. Smith, supra at 714. Evaluating the evidence in light of this standard, we conclude that Officer Thong's purported assurance would not support a defense of entrapment by estoppel. See id. at 715. As discussed, supra, Officer Thong's statement that the defendant should "follow [him]" did not pertain to the legality of his conduct. It is not contested that the defendant knew he had an active abuse prevention order that prohibited him from being within one hundred yards of the victim's residence. Despite that knowledge, the defendant did not inform Officer Thong or inquire whether he was aware of the order before proceeding to the home. The defendant could have chosen to either inform Officer Thong of the order, and seek permission to be within one hundred yards of the victim's residence in the company of the police, or he could have remained in compliance with the order by parking his car more than one hundred yards from the residence and waited for his child to pick up his belongings. Although we do not suggest that the defendant had an obligation to inform the police of his active order, the defendant's failure to give Officer Thong of this fact supports our conclusion that the prosecution of defendant was not unfair.

10

2. _Ultimate-issue testimony_. The defendant argues for the first time on appeal that he is entitled to reversal of his conviction because Officer Thong offered improper opinion testimony on the ultimate issue. We agree that Officer Thong did so. But we conclude that the error did not create a substantial risk of a miscarriage of justice.

It is fundamental that a witness, including a police witness, may not give an opinion regarding a defendant's culpability. See Commonwealth v. Hamilton, 459 Mass. 422, 439 (2011); Commonwealth v. Lodge, 431 Mass. 461, 467 (2000). While there is "no rule in Massachusetts prohibiting an opinion that touches on an ultimate issue," Commonwealth v. Canty, 466 Mass. 535, 543 (2013); Mass. G. Evid. § 704 (2023) ("An opinion is not objectionable just because it embraces an ultimate issue"), such testimony cannot directly speak to, or express a point of view on, the issue of guilt or innocence. See Commonwealth v. Tanner, 45 Mass. App. Ct. 576, 579 (1998). Therefore, when "an opinion comes close to an opinion on the ultimate issue of guilt or innocence, the probative value of the opinion must be weighed against the danger of unfair prejudice." Canty, supra at 543-544. See generally Mass. G. Evid. § 403, and cases cited.

First, the defendant argues that Officer Thong improperly testified, on direct and re-direct, to his belief that the

defendant was in violation of the abuse prevention order. Officer Thong testified that after learning that the victim had an abuse prevention order against the defendant, he requested additional officers to the scene because "it seems like it's going to be a restrain[ing] order violation." Officer Thong and the other officers then "determined that there was in fact a restraining order violation" and arrested the defendant "[f]or violation of a restraining order." We agree with the defendant that this testimony constituted improper opinion testimony on the defendant's culpability. While the prosecution may present evidence to "enable[e] the jury to understand the complete occurrence," Commonwealth v. Ward, 45 Mass. App. Ct. 901, 903 (1998), it may not do so to elicit an opinion on the ultimate issue in the case. See Commonwealth v. Woods, 419 Mass. 366, 375 (1995).

However, the unobjected-to opinion testimony here does not require reversal because we do not have "a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Randolph, 438 Mass. 290, 297 (2020), quoting Commonwealth v. Azar, 435 Mass. 675, 687 (2002). The Commonwealth presented a strong case. The evidence established that the victim had an active abuse prevention order against the defendant which required the defendant to remain one

12

hundred yards away from the victim and her residence, the defendant knew of the existence and contents of the order, and the defendant came within one hundred yards of the victim and her residence.  This evidence, supported by the judge's instructions that the jurors were "the sole and exclusive judges of the facts", that the testimony of a police officer "is entitled to no special or exclusive sanctity" and jurors "should not believe or disbelieve them merely because they're police officers," and that the Commonwealth must prove the defendant's guilt beyond a reasonable doubt, sufficed to avert any substantial risk of a miscarriage of justice.  See Commonwealth v. Gallagher, 91 Mass. App. Ct. 385, 390 (2017) (in face of strong evidence and specific jury instructions, trooper's erroneous testimony on ultimate issue did not cause prejudice).

The defendant also challenges as improper the victim's testimony on cross-examination that she told Officer Thong to arrest the defendant because he was in violation of the abuse prevention order.  Specifically, defense counsel asked the victim, "So, you ran outside the house into the driveway to tell Officer Thong to arrest him?," to which the victim replied, "I told him that he's breaking the restraining order."  Defense counsel then immediately followed up by asking, "You ran outside of your house to tell Officer Thong to arrest him?  Yes or no?"

13

The victim responded, "I told him that he needs to be arrested because he broke the restraining order." Defense counsel then asked again, "You told Officer Thong to arrest the defendant; right?" to which the victim responded, "Yes, I said that he needs to be arrested because he's breaking the restraining order." Here, the defendant opened the door to unfavorable testimony by asking the victim on cross-examination about what she told Officer Thong. We discern no error. Even if the victim's testimony constituted improper opinion testimony that exceeded an open-door justification, there was no substantial risk of a miscarriage of justice for the same reasons discussed above in our analysis of Officer Thong's testimony that the defendant violated the order. See, e.g., Commonwealth v. Saunders, 75 Mass. App. Ct. 505, 510 (2009).

3. Audio recording. The defendant contends that the trial judge abused his discretion in not allowing defense counsel to use audio of a radio call to refresh the victim's recollection or, in the alternative, to impeach the credibility of the victim.[3] We disagree. "We review evidentiary rulings for an

_____

[3] We assume without deciding that the defendant sufficiently preserved this claim by filing a prospective motion indicating his intent to use the recording to refresh witness recollection or impeach witness credibility and by requesting to play the recording immediately after the victim testified, "I can't remember. . ."

14

abuse of discretion, which requires a demonstration that the judge made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). Commonwealth v. Driscoll, 91 Mass. App. Ct. 474, 476 (2017). Where the issue is preserved, we also must determine whether the trial judge's abuse of discretion prejudiced the defendant. See Commonwealth v. Souza, 492 Mass. 615, 626-627 (2023).

On cross-examination, the victim testified that she could not remember if Officer Southern told her that the defendant would not be coming to her house with the child; she testified only that the officer informed her that the defendant was not with the child. In response, the defendant sought to play an audio recording of a telephone call during which the victim asked Officer Southern if the child would be "coming with" the defendant, to which Officer Southern replied, "No, he would be by himself." The trial judge denied the defendant's request, finding the victim's testimony and the purported content of the recording essentially the same.

The defendant's argument that the judge should have permitted him to play the recording to refresh the victim's recollection is unconvincing. "The limits of cross-examination

15

ordinarily rest in sound judicial discretion." Commonwealth v. Woodbine, 461 Mass. 720, 738 (2012). What exactly Officer Southern told the victim or what the victim remembered Officer Southern saying to her about the defendant was not relevant to whether the defendant was in violation of the abuse protection order. The judge properly, in his discretion, did not allow the defendant to play the recording based on the judge's stated understanding (which defense counsel did not challenge) that the recording was essentially duplicative of the victim's testimony. Similarly, the defendant's claim that the judge should have admitted the recording as extrinsic evidence to impeach the victim's credibility is also unavailing. "[E]xtrinsic evidence on a collateral matter may be introduced at trial for the purposes of impeachment only in the discretion of the judge" (citation omitted). Commonwealth v. Farley, 443 Mass. 740, 751 (2005). The conviction did not depend on the victim's credibility, as both Officer Thong and the defendant's own witness placed the defendant in violation of the order by being within one hundred yards of the victim and her residence. See Farley, 443 Mass. at 751 (finding no abuse of discretion where judge did not allow impeachment by extrinsic evidence on collateral issue of witness's credibility). Whether the victim was mistaken or lying when she testified, as proven by the audio

16

recording, was only marginally relevant at best.  Accordingly, we discern no abuse of discretion.

Regardless, the exclusion of the recording did not prejudice the defendant considering the strength of the Commonwealth's case.  Souza, 492 Mass. at 627 ("An error is not prejudicial if it did not influence the jury, or had but very slight effect").  As discussed, supra, the relevancy of the recording was marginal at best and any benefit of the recording to the defendant was limited given that the defendant's conviction for violating the abuse prevention order depended neither on the exact words Officer Southern communicated to the victim nor the credibility of the victim.

Judgment affirmed.

By the Court (Sacks, Smyth & Wood, JJ.[4]),

Clerk

Entered:  November 26, 2025.

---

[4] The panelists are listed in order of seniority.