**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Terence HATTERMANN, Defendant–Appellant.**

No. 87–1883.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1988.
Decided Aug. 1, 1988.
Rehearing Denied Aug. 19, 1988.

Richard H. Parsons, Peoria, Ill., for defendant-appellant.

K. Tate Chambers, Asst. U.S. Atty., J. William Roberts, U.S. Atty., U.S. Attorney's Office, Springfield, Ill., for plaintiff-appellee.

Before POSNER, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Terence Hattermann was convicted of nineteen counts of obtaining cocaine through misrepresentation, in violation of 21 U.S.C. § 843(a)(3), and nineteen counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Hattermann appeals his conviction, claiming that he was denied effective assistance of counsel in violation of the sixth amendment. We affirm.

## I.

Until his conviction in May 1987, Hattermann was a licensed pharmacist practicing in Bartonville, Illinois. On nineteen separate occasions, between October 1981 and August 1985, Hattermann bought a total of fifty-one ounces of pharmaceutical cocaine, using his Drug Enforcement Administration ("DEA") controlled substance license to acquire the drug.

In the fall of 1985, the unusual volume of cocaine ordered by Hattermann [1] came to the attention of the DEA which referred the matter to the Illinois Department of Registration and Education ("IDRE"). On October 7, 1985, Investigator Robert Crawford of the IDRE visited the defendant's pharmacy. Crawford asked to see Hattermann's prescriptions for cocaine, and the defendant admitted that he had never dispensed cocaine through prescription. At trial, Crawford testified that when he pressed Hattermann for further information, the defendant claimed that he did not have any cocaine in his inventory, because he had given it to an uncle who had cancer. Crawford further testified that Hattermann admitted that he did not have a prescription for the cocaine he gave his uncle, who had since died. According to Crawford, Hattermann also asked him if there was any way to avoid turning in the information to the IDRE. Crawford replied no, and then told Hattermann that he would return in three days, on October 10, 1985, to examine Hattermann's controlled substances records.

Crawford testified that when he returned on October 10, 1985, Hattermann told him that he had witnessed an armed robbery of his pharmacy the previous night.[2] The thief had stolen all of his drug records, Hattermann claimed, including his prescription files and DEA inventory records. According to Crawford, Hattermann did not mention at that time that any cocaine had been taken in the armed robbery. Yet, the loss report filed by Hattermann with the Bartonville Police Department claimed that "several bottles" of cocaine had been stolen from the pharmacy. After obtaining a copy of the loss report, Crawford asked Hattermann how many bottles of cocaine had been taken. Crawford stated that Hattermann would only say that it could mean up to ten one ounce bottles.[3]

The amount of cocaine that Hattermann alleged was stolen from the pharmacy continued to increase with the passage of time. Special Agent F.T. Simmons, Division of

---

**1.** In both 1982 and 1983, the defendant's pharmacy was the eighth largest purchaser of cocaine in the United States.

**2.** The robbery claimed by the defendant, if true, was only the second armed robbery in Bartonville in the seven years preceding his indictment. Although a 12-year-old boy witnessed a man who matched the description of the thief running from the pharmacy shortly after the time Hattermann claimed to have been robbed at gunpoint, the alleged details of the robbery encourage skepticism. Hattermann variously claimed a loss of cocaine ranging from "several" ounces to all 51 ounces; his explanation as to his activities and whereabouts that day was inconsistent; and his claim that the robber hit him hard enough to knock him unconscious was contradicted by his admission that he did not sustain even a bruise where he was hit. The district court, describing Hattermann's account of the robbery, concluded that, "I find that story in contrast to my listening to the evidence in this case absolutely preposterous."

**3.** Hattermann disputes Crawford's account of these events. For a discussion of Hattermann's testimony, *see infra* at 559.

Criminal Investigation of the Illinois State Police, testified at trial that when he interviewed Hattermann a week later, the defendant told Simmons that the robber had taken between fifteen and thirty ounces.[4] At trial, Hattermann testified that the armed robber stole all fifty-one ounces of cocaine.

On October 9, 1986, a thirty-nine count indictment was filed in the United States District Court for the Central District of Illinois charging Hattermann with thirty-nine drug related counts. The first nineteen counts charged Hattermann with the unlawful acquisition of cocaine under 21 U.S.C. § 843(a)(3). The second nineteen counts charged Hattermann with possession of cocaine with intent to distribute under 21 U.S.C. § 843(a)(1), and Count 39 charged Hattermann with distribution of cocaine under 21 U.S.C. § 841(a)(1). Count 39 was dismissed before trial on the motion of Hattermann's trial counsel, Joseph Napoli. Trial began on February 17, 1987. Following trial, the jury found the defendant guilty on all thirty-eight counts. The district court sentenced Hattermann to three years' imprisonment, to be followed by five years' probation. The trial judge also fined Hattermann $5,000 to be paid during his period of probation.

■ Hattermann discharged Napoli and retained new counsel for this appeal. Hattermann filed a motion in this court, requesting release on bond pending appeal, which raised the issue of effectiveness of counsel for the first time. We remanded the case to the district court for an evidentiary hearing on this issue.[5] After the hearing, the district court held that although it did not find Napoli's representation of Hattermann to be ineffective, the issue was "substantial" for purposes of securing bail pending appeal under 18 U.S.C. § 3143(b)(2).[6] Accordingly, the district court released Hattermann on bond pending his appeal.

## II.

Hattermann argues on appeal that he was denied effective assistance of counsel at his trial as guaranteed by the sixth amendment. He contends that Napoli, his trial attorney, made a series of errors indicative of a general inability to provide an

---

4. Hattermann testified at trial that he did not make any estimate of the loss of cocaine, contradicting Simmons' statement to the contrary. See infra at 559.

5. We review the district court's factual findings with regard to Napoli's representation of the defendant under the clearly erroneous standard. Anderson v. Bessemer City, 470 U.S. 564, 572, 105 S.Ct. 1504, 1510, 84 L.Ed.2d 518 (1985). We review the district court's legal determinations de novo. United States v. Montoya, 827 F.2d 143, 146 (7th Cir.1987); Gianukos v. Loeb, Rhoades & Co., 822 F.2d 648, 652 (7th Cir.1987).

6. The statute regulating release of a defendant pending appeal states in part that:
    The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
    (1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
    (2) that the appeal is not for purpose of delay and raises a substantial question of law

or fact likely to result in reversal, an order for a new trial, or a sentence which does not include a term of imprisonment.
    If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with 3142(b) or (c) of this title.
18 U.S.C. § 3143(b). In the instant case, the district court had previously found that the defendant was neither a risk of flight nor a danger to the community. Accordingly, the only issue remaining for the district court to resolve with regard to release pending appeal was whether defendant's appeal raised a substantial issue.
    An issue is "substantial," in accordance with 18 U.S.C. § 3143(b)(2), if it presents "a 'close' question or one that very well could be decided the other way." United States v. Shoffner, 791 F.2d 586, 589 (7th Cir.1986) (per curiam) (quoting United States v. Giancola, 754 F.2d 898, 901 (11th Cir.1985)). See also United States v. Thompson, 787 F.2d 1084, 1085 (7th Cir.1986) (per curiam); United States v. Bilanzich, 771 F.2d 292 (7th Cir.1985). This standard does not require the district court to predict the outcome of the appeal. In the instant case then, the district court granted the defendant's motion for bond pending appeal despite its explicit finding that Napoli's performance was not deficient under the Strickland standard.

effective defense. Most significantly, according to Hattermann, Napoli failed to provide expert testimony in support of Hattermann's contention that he had an extreme fear of contracting skin cancer. Napoli did not present expert testimony with regard to Hattermann's "cancerphobia" defense. Instead, Napoli relied upon statements elicited from the expert who testified in the government's case-in-chief, as well as upon Hattermann's own testimony. Hattermann contends on appeal that Napoli's failure to provide expert testimony in this area destroyed his credibility with the jury and led to his conviction.

The standard for determining whether Hattermann received effective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.... [T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690, 104 S.Ct. at 2066. The Supreme Court emphasized that even a deficient performance on the part of trial counsel

should not lead to reversal in the absence of evidence that the attorney's performance prejudiced the defense. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. *See also United States v. Giangrosso*, 779 F.2d 376, 379 (7th Cir.1985) (*quoting Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068).

Because we do not find that Napoli's performance, including his failure to call an expert witness, undermined confidence in the outcome of the trial, we do not address the issue of whether his performance was deficient. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

### III.

■ Hattermann claims both that trial counsel's actions constituted a pattern of ineffectiveness, and also that one serious error—Napoli's failure to present an expert witness to testify with regard to Hattermann's cancerphobia—deprived him of effective assistance of counsel.[7] Defendant raises numerous examples of actions taken by Napoli in the course of the trial that he alleges established a pattern of ineffectiveness. These claims range from Napoli's lack of experience in federal court and unfamiliarity with the Federal Rules of Evidence to a general failure to adequately prepare for trial.[8] We find that neither

---

7. On appeal, Hattermann cites *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), in support of his argument that a single serious error by counsel may constitute ineffective assistance of counsel. *Stone* does not contain the quotation that counsel attributed to it in his brief and at oral argument. In addition, we were unable to locate any other Supreme Court case with the same or similar language. The misattribution of this quote, even if made in good faith, impaired appellate counsel's presentation in this court.

8. Hattermann claims that the following actions taken by Napoli demonstrate a pattern of ineffectiveness:

   (a) he discussed his intention to use a particular witness at trial with a state prosecutor, who reported her conversation with Napoli to the U.S. Attorney's office, and forwarded a copy of a recent state judgment of perjury against the potential witness to the government; (b) he was allegedly not prepared adequately for trial; (c) he failed to consult with the defendant about plea bargaining opportunities and his decision not to object to the impaneling of the jury three weeks before trial; (d) he failed to move the court to poll the jury members individually to make certain that they had complied with the judge's instructions to avoid discussing or reading about the case prior to trial; (e) he introduced a character witness, whose testimony opened the door for the government to introduce previously excluded evidence impeaching defendant's reputation for honesty; (f) he failed to produce three other potential character witnesses to buttress testimony of defendant's good reputation in the community; and (g) he failed to preserve for appeal the notes he had made in preparation for trial.

Napoli's allegedly ineffective acts nor omissions had a significant effect on the jury's verdict. The defendant stipulated to the fact that he acquired the cocaine through nineteen separate orders between October 1981 and August 1985. His only defense was that his fear of cancer compelled him to stockpile the cocaine and that he did not have any illegal purpose or intent to distribute the cocaine.

The defendant's stronger claim is that his credibility was destroyed by his counsel's failure to present expert testimony in support of his claimed cancerphobia.[9] The district court found that although Napoli's conduct did not constitute ineffective assistance of counsel, Napoli's failure to further pursue the cancerphobia defense damaged Hattermann's credibility with the jury. While we agree with the district court that an expert witness may have enhanced the defendant's credibility, Hattermann failed to present any evidence on remand that indicated that expert witnesses were available to testify with regard to his cancerphobia or what the substance of such testimony would have been.

Further, although the credibility of his testimony may have been enhanced in that one area by expert testimony, Hattermann's overall believability was sorely tested by other areas of his defense. In fact, the district court described the defendant's overall testimony as "bizarre and preposterous." Hattermann's own explanation of the chain of events leading to his indictment is fantastic, to say the least. In addition to his claim that cancerphobia compelled him to order the cocaine, Hattermann gave no credible explanation as to why the relevant controlled-substance records were missing, nor could he account

for the whereabouts of *any* of the cocaine. The defendant claimed to have ordered the cocaine whenever he felt depressed and fearful about contracting melanoma, but he never kept track of how much of the drug he ordered.[10] He also testified that he never confided in anyone about what he was doing, including a psychiatrist or any other physician, nor did he consult with a doctor about which drugs were most effective in countering the pain associated with melanoma. Finally, Hattermann testified that all the records and all the cocaine were stolen the very night before Crawford was scheduled to return to the pharmacy to inspect his controlled substance records. In short, Hattermann's own series of alibis and explanations were far more damaging to his defense than any failure to call an expert to testify on his behalf.

In addition, Hattermann contradicted government witnesses whom the jury could have found more credible. Hattermann's version of his conversation with Investigator Crawford of the IDRE differed substantially from Crawford's testimony. Crawford testified that Hattermann claimed to have given all his cocaine to an uncle who had died of cancer. Crawford also stated that Hattermann asked him not to report the matter to the IDRE. At trial, Hattermann denied that he had made either statement. He also denied that Crawford told him that he would return on October 10, 1985, asserting instead that Crawford said only, "I'll be back." Further, Hattermann denied that he told Crawford that only ten ounces of cocaine had been stolen. This testimony was directly at odds with Crawford's statement.

Hattermann's statements at trial also conflicted with Special Agent Simmons' tes-

---

9. Hattermann does not specify how the other errors allegedly made by counsel prejudiced the result of his trial, or affected the trial's fairness to such an extent as to undermine confidence in its outcome. The defendant claims that the errors and omissions resulted in a deficient performance by his trial attorney. These allegations, though, relate only to the performance component of *Strickland,* and carry no weight with regard to the prejudice component. Because Hattermann raises no specific prejudice arising out of the claimed errors, we need not discuss each error or omission individually.

*United States v. Otero,* 848 F.2d 835, 838 (7th Cir.1988).

10. He testified that he stopped ordering the cocaine in August 1985, after increasing his commitment to his religion, and that he now relies on his faith in God to protect him from contracting skin cancer. During cross-examination, Hattermann conceded that he stopped ordering cocaine the same month that he received an official reprimand from the IDRE for lack of good faith in dispensing another controlled substance, Dilaudin.

timony. Simmons testified that he spoke with Hattermann on November 12, 1985. At that time, Simmons stated, the defendant told him that he had been at the pharmacy all day on the day of the robbery. Hattermann denied this statement at trial. Hattermann also contradicted Simmons' statement that he had estimated the number of missing bottles of cocaine to be at least fifteen but no more than thirty. Hattermann denied making any estimate as to how much cocaine was taken. In addition, Hattermann's account at trial contradicted his own sworn statement filed with the Bartonville Police Department on October 15, 1985, in which he stated that "several" bottles of cocaine were stolen.

Hattermann's version of the events leading up to his indictment is both inconsistent and incredible. Because other aspects of Hattermann's testimony strained his credibility as much as or more than his cancerphobia defense, the failure to present an expert medical witness did not materially prejudice the defendant within the meaning of *Strickland.* Although a different attorney might have presented additional character witnesses, or an expert witness to testify about defendant's cancerphobia, we cannot conclude that Napoli's performance undermined the fairness of Hattermann's trial.

### IV.

Because we do not find that the defendant was materially prejudiced by the errors alleged to have been made by his trial counsel, the judgment of the district court is

AFFIRMED.