# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3283

_____

United States of America

*Plaintiff - Appellee*

v.

Seng Xiong

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 16, 2018
Filed: February 1, 2019

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

A jury convicted Seng Xiong of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. The district court[1] sentenced Xiong to 87 months' imprisonment. Xiong argues that the court erred in disallowing him from presenting affirmative

---

[1]The Honorable Susan Richard Nelson, United States District Judge for the District of Minnesota.

defenses based on perceived government authority, that the court violated his Fifth Amendment rights by questioning him directly, that the court violated his Sixth Amendment rights by barring him from presenting witnesses, and that the court erred in imposing a sentence that is procedurally and substantively unreasonable. We affirm.

## I. Background

Many members of the Hmong ethnic group living in Laos assisted the United States during the Vietnam War. When the United States withdrew from that region, the Hmong faced persecution by the Laotian government. Many Hmong fled to Thailand and other nearby countries, and some eventually settled in the United States.

Xiong, a Hmong man born in Laos, came to the United States at a young age. Beginning in the early 2000s, Xiong participated in various Hmong advocacy organizations. Relevant here, from mid-2014 to early 2016 Xiong represented to the Hmong community that he was working with the United Nations and the United States government to establish a new country for the Hmong in Southeast Asia. He created a group named the Hmong Tebchaws, which translates to "Hmong Country," and referred to himself as Keng Ther Seng, or "First Leader." Xiong's homeland project received enthusiastic support from many in the Hmong community who desire to return to their home country, to be free from persecution, and to reclaim the lives they had before the Vietnam War.

Xiong promoted the Tebchaws and solicited donations through a conference call line, a YouTube channel, a radio broadcast, a website, and a personal cell phone number. Steve Moua, another Hmong individual, allowed Xiong to use the call line he had previously established to sell various supplements within the Hmong community. Moua also used his YouTube channel to upload Xiong's visual presentations. Xiong's website provided a "Returning Home Registration Form" and

his Wells Fargo bank account number so that donors could deposit money directly into his account.

Xiong told his followers that various levels of monetary support would entitle donors to proportional rewards from the soon-to-be established Hmong government. The best benefits would accrue to those who paid amounts between three and five thousand dollars, as they would receive a share of the government's surplus each year, whether it was "billions, millions, [or] trillions." He told his followers that space was limited in each donor class and that Hmong families and individuals needed to obtain membership to join the migration to the new nation. He also told his followers that he could not share much information with them because his operations were "top secret." He said that his project was advancing and that the United States government had considered, and then approved, the new Hmong nation. He released a final video on September 16, 2015, which asserted that authorities would "take [the Hmong] across the ocean" to a newly established homeland within the next few days.

Shortly thereafter, Wells Fargo froze Xiong's account after receiving tips that it was being used in connection with fraud. Law enforcement began investigating Xiong within weeks of his final video. Xiong was arrested and charged in March 2016. By that time, Xiong had received roughly $1.7 million from Hmong individuals, $169,000 of which he spent on personal expenditures such as food, clothing, air travel, hotels, and escorts.

At the government's request, the district court ordered Xiong to disclose whether he intended to raise a defense based on perceived government authority. See Fed. R. Crim. P. 12.3(a). Following Xiong's failure to make the required disclosures, the government moved in limine to exclude any evidence related to any perceived government authority defense unless Xiong proffered the evidence by the time of the

pretrial conference. The court extended the deadline for the Rule 12.3 disclosures, but after Xiong failed to comply, the district court granted the government's motion.

After the deadline had expired, Xiong responded to the court's order with a list of five government officials to whom he would refer, but not call to testify, while presenting his case. The government again moved in limine to prevent Xiong's counsel from suggesting in his opening statement or before presenting Xiong's case-in-chief that Xiong had met with government officials. The court then scheduled a pretrial hearing, ordering Xiong to clarify whether he planned to assert a defense based on perceived government authority, and if he did, to proffer evidence sufficient to make a prima facie showing as to each element of his chosen theories of defense. The court identified the three defenses Xiong might raise based on perceived government authority—public authority, entrapment by estoppel, and innocent intent—and set forth the elements of each defense.

At the pretrial hearing, Xiong's counsel stated that Xiong would testify regarding communications with government officials that led Xiong to believe he could legally pursue operations to establish a Hmong nation. Xiong's counsel was unable to proffer evidence of these communications, however, and asked the court to question Xiong directly to obtain evidence. Noting that the requested procedure was unusual, the court obliged. Without first being placed under oath, Xiong said that he had spoken in 2006 with government official Jackie Sanders, who had promised to forward Xiong's letter proposing a Hmong nation to the White House. Xiong offered no further evidence of this conversation. The court questioned Xiong about the other government officials he had named, and Xiong provided no evidence, other than his testimony, that he had spoken with the officials listed. He provided no evidence of any further government contact.

Recognizing that Xiong was not under oath, the court then placed him under oath and continued questioning him about his perceived government authority

-4-

defenses. After conferring with Xiong, defense counsel informed the court that Xiong would employ only the innocent intent defense, which did not require pretrial disclosures. The government requested that Xiong's counsel not refer to any conversations with government officials before the presentation of Xiong's case-in-chief, and Xiong's counsel agreed.

The government presented evidence at trial that Xiong had lied to his followers about working with authorities to create a Hmong homeland. Various government officials testified that Xiong had never visited the White House, had never spoken with the State Department about forming a new nation, and had never notified the United Nations of the Hmong Tebchaws and their hope for a homeland. The evidence showed that United States and United Nations officials were not aware of Xiong or his project and never approved the creation of a new Hmong nation. Rather, the evidence showed that Xiong had attended roughly three United Nations sessions between 2006 and 2008, when he was affiliated with an advocacy organization called the Congress of World Hmong People, and an informative briefing regarding the Hmong community at the United Nations Visitor Center on September 4, 2015. Special Agent Michael Olson testified that anyone may request an informative briefing on the topic of the requestor's choosing, courtesy of the United Nations tour and visiting service.

In his opening statement, Xiong's counsel highlighted Xiong's "incredible passion for his people." He told the jury to "consider the element of intent" and promised to present evidence that Xiong had planned to establish a homeland when he solicited donations. Xiong, his brother, and four members of the Hmong Tebchaws testified for the defense. Aside from his testimony, Xiong presented no evidence of communications with United States or United Nations officials. In his closing, Xiong's counsel argued that Xiong believed in his mission and lacked intent to commit fraud. Xiong's counsel also blamed Steve Moua and rival cultural groups for framing Xiong. The jury returned guilty verdicts on both counts.

At Xiong's request, new counsel was appointed to represent him at sentencing. The court determined that Xiong's base offense level under the United States Sentencing Guidelines (Guidelines or U.S.S.G.) as to each charged offense was 7. The court applied a 16-level enhancement for the amount of loss, § 2B1.1(b)(1)(I), a 2-level enhancement for committing the offense through mass marketing, § 2B1.1(b)(2)(A)(ii), and, finally, a 2-level enhancement under § 3A1.1(b)(1) in light of its determination that Xiong had preyed on vulnerable victims, to which Xiong lodged an unsuccessful objection. The court determined that Xiong's criminal history category was I and that his adjusted base offense level was 27, resulting in a Guidelines sentencing range of 70-87 months on each count. It sentenced Xiong to 87 months' imprisonment on each count, to run concurrently. The court also imposed a 3-year term of supervised release and restitution totaling $1,226,466.

## II. Discussion

### A. Defenses Based on Perceived Government Authority

We have recognized three defenses based on perceived government authority: public authority, entrapment by estoppel, and innocent intent. "'Public authority' has been described as an affirmative defense where the defendant seeks exoneration based on the fact that he reasonably relied on the authority of a government official to engage him in covert activity." United States v. Achter, 52 F.3d 753, 755 (8th Cir. 1995). Entrapment by estoppel applies "when an official assures a defendant that certain conduct is legal, and the defendant reasonably relies on that advice and continues or initiates the conduct." Id. (quoting United States v. Smith, 940 F.2d 710, 714 (1st Cir. 1991)). Under the innocent intent defense, a defendant claims that "he lacked criminal intent." United States v. Baptista-Rodriguez, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994). The public authority and entrapment by estoppel defenses require pretrial disclosures, including notice and a list of witnesses, under Federal Rule of Criminal Procedure 12.3. The innocent intent defense does not require such disclosures because it is based on the contention that the government failed to prove

the intent element of the crimes. After the pretrial hearing, the district court barred Xiong from raising either the public authority or entrapment by estoppel defenses, but Xiong remained free to pursue an innocent intent theory.

Xiong argues that the district court abused its discretion by requiring him to show actual authority from a government official to raise any of the three perceived government authority defenses.[2] Xiong argues that the court's incorrect legal standard barred him from mentioning government contacts and raising perceived government authority defenses at trial.[3] "A district court abuses its discretion if it commits an error of law." Emery v. Hunt, 272 F.3d 1042, 1046 (8th Cir. 2001). Because Xiong failed to object to the preclusion of any public authority and entrapment by estoppel defenses, he has not properly preserved this issue for appeal. Fed. R. Evid. 103(a)(2). We therefore review the district court's decision to exclude the defenses and related evidence for plain error. Walker v. Kane, 885 F.3d 535, 538 (8th Cir. 2018).

---

[2]Xiong concedes that the court correctly explained these requirements in its order requiring a pretrial hearing, but he claims that the court deviated from its order at the pretrial hearing and required him to show actual authority from a government official to present any of the three perceived government authority defenses.

[3]The court allowed Xiong to present an innocent intent defense without any pretrial proffer, and he availed himself of the opportunity, despite his arguments to the contrary. This is clear from his counsel's remarks and questioning throughout the trial. For example, Xiong's counsel promised in his opening remarks to "present to [the jury] what [Xiong's] intentions are, what his good faith intentions are in this -- in his journey or in his pursuit of a Hmong Country or Hmong Tebchaws for his members and his people." Counsel continued "I want you to consider the element of intent . . . you will hear directly from Mr. Xiong the reasons and the basis and the substantiation for his actions." We thus reject any argument that the court precluded Xiong from presenting this defense.

The record reveals that the district court required Xiong to show actual authority only for a public authority defense. We have held that such a defense is available when a defendant "reasonably relied on the authority of a government official," Achter, 52 F.3d at 755, but we have not yet addressed whether the defense requires a showing of actual, as opposed to apparent, authority.[4] See United States v. Evans, 972 F.2d 355 (8th Cir. 1992) (unpublished table decision) (discussing but not deciding the issue). Nor does Xiong provide us an occasion to do so. He offered no evidence sufficient to meet a lesser apparent authority standard, rendering harmless any error by the district court.

Because Xiong failed to show even apparent authority, the court did not err in preventing him from raising a public authority defense at trial. Nor did the court err in precluding him from presenting an entrapment by estoppel defense in light of his failure to offer any evidence. See Achter, 52 F.3d at 755 (concluding that the district court properly precluded the defendant from presenting public authority or entrapment by estoppel defenses because he proffered insufficient evidence to support the defenses); see also United States v. Benning, 248 F.3d 772, 777 (8th Cir. 2001) (same as to entrapment by estoppel defense).

B. Constitutional Violations

Xiong argues that the district court violated his Fifth Amendment right against self-incrimination by directly questioning him in the pretrial conference. The Fifth Amendment promises that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This privilege against self-

---

[4]Our sister circuits to consider the issue unanimously require actual authority. See United States v. Sariles, 645 F.3d 315, 319 (5th Cir. 2011); United States v. Fulcher, 250 F.3d 244, 254 (4th Cir. 2001); United States v. Pitt, 193 F.3d 751, 758 (3d Cir. 1999); Baptista-Rodriguez, 17 F.3d at 1368 n.18; United States v. Duggan, 743 F.2d 59, 84 (2d Cir. 1984).

incrimination "is a fundamental trial right," and while pretrial questioning may "ultimately impair that right, a constitutional violation occurs only at trial." United States v. Verdugo-Urquidez, 494 U.S. 259, 264 (1990). Xiong was questioned outside the presence of the jury, and his statements were not presented to the jury. Xiong alleges that the court at one point "relayed [his statements] to the jury as an admission of guilt," Appellant's Br. at 28, but the language he cites comprises the district court's summary of Xiong's indictment for the jury. We conclude that Xiong has failed to show any violation of his right against self-incrimination.

Xiong also contends that the district court violated his Sixth Amendment right to compulsory process by requiring actual authority to present his defenses and by determining that Xiong could not refer to United States or United Nations officials when asserting his innocent intent defense. The Sixth Amendment guarantees an accused the right to "have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. "Before a criminal defendant is entitled to compulsory process, however, he must establish that the testimony of the witnesses whose presence he wishes to compel is favorable and material." Perry v. Lockhart, 871 F.2d 1384, 1386-87 (8th Cir. 1989). Xiong's failure to name any witnesses that he was prevented from calling precludes any evaluation of the materiality of such testimony, and we thus conclude that Xiong's right to compulsory process was not violated.

We do not consider Xiong's argument that his trial counsel provided ineffective assistance in violation of his Sixth Amendment rights. "We will not consider an ineffective assistance claim not first presented to the district court and on which a proper record has not been made." United States v. Duke, 940 F.2d 1113, 1120 (8th Cir. 1991).

C. Sentencing

Xiong claims that the district court's sentence was substantively unreasonable because the court gave inadequate weight to the sentencing goal of reducing disparity among similarly situated defendants. He compares his 87-month sentence to the 120-month sentence of fraudster Denny Hecker, who stole substantially more money than Xiong did. We discern no abuse of discretion. United States v. Soliz, 857 F.3d 781, 783 (8th Cir. 2017) (standard of review). The court explicitly considered disparities among similarly situated defendants and adequately explained its sentence, reasoning that Xiong had lied to his followers, preyed on their vulnerabilities, and maintained his innocence at sentencing. Pointing to Hecker's sentence does little for Xiong. See id. ("The sentencing practices of one district court are not a reference point for other courts.").

Xiong disputes the court's application of a vulnerable victim enhancement for the first time in his reply brief. We generally do not address arguments initially raised in reply briefs, though we may if the new arguments supplement those raised in the initial brief. See Jones v. Aetna Life Ins. Co., 856 F.3d 541, 549 (8th Cir. 2017). Xiong's argument supplements none initially raised, and we thus decline to consider it.

The judgment is affirmed.

_____