# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-1151
_____

United States of America

*Plaintiff   Appellee*

v.

Nedzad Juhic

*Defendant   Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines
_____

Submitted: January 17, 2020
Filed: March 31, 2020
_____

Before COLLOTON, SHEPHERD, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

Nedzad Juhic appeals his conviction for transportation and receipt of child pornography in violation of 18 U.S.C. §§ 2252(a)(1)- (2), (b)(1). Juhic challenges the

district court's[1] denial of his motion for the court to appoint its own expert to examine Agent Simon's laptop, his proposed jury instruction on innocent intent, and his motion to continue jury deliberations. Juhic also appeals the admission of computer-generated reports. We affirm.

## I. Background

In June 2015, Homeland Security Special Agent Aaron Simon was investigating peer-to-peer child pornography distribution in Iowa using an automated Child Protection System ("CPS"). The program located an IP address potentially sharing child pornography. Agent Simon used ShareazaLE, another law enforcement program, to connect to the IP address and download 42 files containing child pornography. Agent Simon downloaded 10 files from a second IP address. Further investigation revealed that both IP addresses were registered to Juhic.

Officers executed a search warrant on September 30, 2015, at Juhic's residence. Juhic was not home, but he and his wife went to Agent Simon's office a few days later. Agent Simon and Juhic had a voluntary conversation. Agent Simon called a Bosnian-speaking police officer to translate if needed. During their conversation, Juhic stated that he was the only one who used his laptop, that he had "maybe a thousand" videos of child pornography, that he shared videos with people he chatted with online, and that he knew the children in the videos were under eighteen. Juhic voluntarily provided his personal laptop to Agent Simon. Forensic analysis of the laptop in late September 2015 revealed 1,548 videos and 38 images of child pornography.

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

Before trial, Agent Simon mistakenly believed that he had lost access to the downloads from the case due to a ransomware attack on one of his undercover laptops. This belief was conveyed to Juhic's counsel. Shortly thereafter Agent Simon realized that he had searched for the materials on the wrong laptop and that the ransomware issue had been resolved prior to the investigation of Juhic. Because of the conflicting accounts, Juhic asked the district court to appoint its own expert to examine Agent Simon's undercover laptop. In support of his motion Juhic argued that it was possible that the child pornography on his laptop had been placed there by the ransomware on Agent Simon's undercover laptop. The court stated, "I don't think it's an appropriate thing for the Court to get involved in essentially investigating, on behalf of one side or the other, this issue" and denied the motion. The court also denied Juhic's proposed jury instruction on innocent intent because it did not believe that the instruction was a correct statement of law. The court noted that an instruction on Juhic's proposed theory would be more confusing than helpful to the jury.

At trial, the government introduced multiple computer-generated reports during Agent Simon's testimony. The reports were automatically generated by the CPS and ShareazaLE programs based on interactions with Juhic's IP addresses. The reports included notations identifying whether files were "child-notable" or part of a "series" of child pornography that had been submitted to the National Center for Missing and Exploited Children ("NCMEC"). Juhic objected to the reports as inadmissible hearsay. The court admitted the exhibits as business records under Federal Rule of Evidence 803(6).

After instructions and the closing arguments, the court submitted the case to the jury and dismissed the alternate jurors. During deliberations a juror informed the court that she was suffering from a migraine. The court spoke with the juror and determined that she was able to continue with deliberations. The court denied Juhic's motion to continue deliberations until the following morning. Approximately 45

minutes later, the jury found Juhic guilty of receipt and transportation of child pornography.

## II. Discussion

### *A. Court Appointed Expert*

Juhic argues that the district court erred in denying his request for a court appointed expert to examine Agent Simon's undercover laptop under Federal Rule of Evidence 706.[2] We review a district court's decision not to appoint an expert witness for abuse of discretion. See United States v. Provost, 875 F.2d 172, 175 (8th Cir. 1989) ("A trial court has broad discretion to grant application for appointment of an expert witness."); see also Toney v. Hakala, 556 F. App'x. 570, 571 (8th Cir. 2014) (unpublished).

Rule 706 allows the district court to use its "discretion to procure the assistance of an expert of its own choosing." Sorensen ex rel. Dunbar v. Shaklee Corp., 31 F.3d 638, 651 (8th Cir. 1994); accord U.S. Marshals Serv. v. Means, 741 F.2d 1053, 1057–58 (8th Cir. 1984) (en banc) (stating that a district court has discretionary power to call its own expert witness). In ruling on the issue at a pretrial hearing, the court did not find reason to believe that further investigation of Agent Simon's laptop would lead to exculpatory information.

---

[2]Juhic also argues that not allowing him to examine Agent Simon's undercover laptop is a violation of the Walsh Act, 18 U.S.C. § 3509(m). The Walsh Act is not applicable here because it applies to the examination of the material that constitutes child pornography, not the computer used during the investigation. Juhic has made no argument that the videos and pictures at issue were not child pornography or that he was not able to examine those materials.

Juhic has presented no evidence in support of his theory that ransomware on Agent Simon's laptop planted child pornography on Juhic's laptop. Juhic's own expert had an opportunity to look for artifacts of malware on Juhic's laptop and found no evidence of ransomware. At trial, it was established that the ransomware infecting Agent Simon's undercover laptop had been mitigated and ShareazaLE reinstalled by April 20, 2015. The files found on Juhic's laptop were downloaded between July and September 2015, months after Agent Simon used his laptop to monitor Juhic's IP address in June 2015. Testimony at trial also established that ShareazaLE could not upload programs to other computers and that the ransomware on Agent Simon's undercover laptop was not the type that attempted to infect other machines. Juhic provided no justifiable reason for the court to appoint its own expert, and the court did not abuse its discretion when it refused to do so.

*B. Innocent Intent*

Juhic contends that the court erred in refusing to allow him to present his innocent intent theory to the jury. We review a district court's decision to deny a defendant's proposed jury instruction for abuse of discretion. United States v. Parker, 871 F.3d 590, 604 (8th Cir. 2017). We will affirm jury instructions that, when "taken as a whole, fairly and adequately submitted the issues to the jury." Id. (quotation marks omitted).

We have recognized defenses based on perceived government authority, including public authority, entrapment by estoppel, and innocent intent. United States v. Xiong, 914 F.3d 1154, 1159–60 (8th Cir. 2019). The innocent intent defense is based on a contention that the government failed to prove the defendant possessed the crime's required criminal intent. Id. However, transportation and receipt of child pornography do not require criminal intent, merely knowledge. See 18 U.S.C. §§ 2252(a)(1) ("knowingly transports"), (a)(2) ("knowingly receives"). Juhic admitted to Agent Simon that he knew he possessed and shared child

pornography. Why Juhic possessed the child pornography does not matter. Additionally, because Juhic admitted that he never spoke to law enforcement before collecting child pornography videos, he could not submit a public authority defense. See Xiong, 914 F.3d at 1160. The district court did not abuse its discretion in denying Juhic's innocent intent theory.

### C. Computer Generated Reports

Juhic argues that the district court erred by admitting computer-generated reports because they contained inadmissible hearsay. The court admitted the exhibits as business records. On appeal, the government abandons the business record exception and argues that the reports were not hearsay at all.

Exhibits 1 and 3 were automatically generated CPS reports that include a "child-notable" notation on 474 files offered by Juhic's account. A "child-notable" file is a category of file that law enforcement provides to CPS when they find known child pornography. The notation is based on law enforcement placing the hash values of previously identified child pornography into the CPS system. The process of searching for "child-notable" files, generating log files, and generating reports is automated. Trial testimony established that the report's data comes from criminal investigations, including prosecutions, and is considered to be "like a police report." Exhibits 2 and 4 were automated summary reports of what the ShareazaLE program automatically downloaded from Juhic's account, which files it tracked, and what has been done with those files. The summary reports include notations showing whether a file was part of a named child pornography series submitted to NCMEC.

We review a district court's contested hearsay rulings for an abuse of discretion and will not reverse if the error was harmless. United States v. Iu, 917 F.3d 1026, 1033 (8th Cir. 2019). "An evidentiary error is harmless if the record demonstrates that the defendant's substantial rights were unaffected and that the error did not

influence or had only a slight influence on the verdict." United States v. Lundstrom, 880 F.3d 423, 440 (8th Cir. 2018) (quotation marks omitted). Erroneously admitting evidence that is cumulative of other admissible evidence is harmless. Id. at 440–41.

Machine-generated records usually do not qualify as "statements" for hearsay purposes but can become hearsay when developed with human input. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310–11 (2009). In United States v. Morrissey, we determined that a spreadsheet similar to the reports at issue here was hearsay. 895 F.3d 541, 547, 554 (8th Cir. 2018). The spreadsheet indicated which files the testifying officer believed to be child pornography and which files NCMEC had previously identified as child pornography. Id. We determined that the spreadsheet was offered into evidence to prove that the images were child pornography, and we assumed without deciding that the NCMEC confirmations were testimonial. Id.

Like in Morrissey, the computer-generated reports offered against Juhic contained inadmissible hearsay. The "child-notable" and "series" notations are out-of-court statements offered for the truth of the matter asserted: that the videos and images were child pornography. Fed. R. Evid. 801(c); see Morrissey, 895 F.3d at 554. While the reports may have been computer-generated, human statements and determinations were used to classify the files as child pornography. It was only after a human determined that a file contained child pornography that the hash value or series information was inserted into the computer program and automatically noted in future reports. The human involvement in this otherwise automated process makes the notations hearsay.[3]

_____

[3]This differs from the Rule 1006 summary admitted in United States v. Fechner, where the testifying officer created a summary describing the content of videos downloaded during the investigation. – F.3d –, 2020 WL 1173550 (8th Cir. 2020). In Fechner, the summary described admissible videos and did not make any assumptions or conclusions about what was contained in the video. Here, the "child-notable" and "series" notations are conclusions about what the videos and images

-7-

However, any error in admitting the notations on the computer-generated reports was harmless. A plethora of other evidence existed to support the jury's verdict. Juhic told Agent Simon that he had "maybe 1000" videos, that he watched them, and that he shared them with people in chat rooms. Juhic stated that he guessed the children in the videos were between the ages of nine and fourteen. Forensic analysis found over 1,500 videos of child pornography on Juhic's laptop. The jury saw segments of the videos and was able to make its own determination of whether they were child pornography. Additionally, Agent Simon testified that he compared and matched the videos found on Juhic's laptop with previous ShareazaLE downloads. Based on the overwhelming amount of evidence supporting Juhic's conviction, any error in admitting the computer-generated reports was harmless. Substantial evidence existed to convict Juhic without the reports.

*D. Jury Deliberations*

Juhic also contends that the district court erred in denying his motion to continue jury deliberations. After the court dismissed the alternate jurors, one of the jurors informed the bailiff that she was suffering from a migraine. This information was brought to the court's attention and the judge spoke to the juror who informed the court that she felt as though she could deliberate for the rest of the day. The juror was provided with pain medicine, cold water, and sunglasses to help with her symptoms, and asked whether she wanted to continue with deliberations. The juror told the court she felt well enough to deliberate. The court noted that, in subsequent conversations, the juror looked better, was lucid, and no longer appeared to be in pain. The court denied Juhic's motion to recess until morning.

We review jury issues and a district court's decision to deny a request for recess for abuse of discretion. United States v. Evans, 272 F.3d 1069, 1087 (8th Cir.

contain and would not qualify as a Rule 1006 summary.

2001) (jury issues); <u>United States v. McMasters</u>, 90 F.3d 1394, 1402 (8th Cir. 1996) (recess). Here, the juror told the district court that she was able to continue with deliberations. The court observed that she appeared to be feeling better, and nothing in the record suggests that allowing the juror to monitor her own health was an error. Without more than the abstract idea that the juror's migraine caused the other jurors to "hurry up" their deliberations, Juhic has not established that the district court abused its discretion.

## III. Conclusion

For the foregoing reasons, we affirm.

_____