In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-2406

RONALD NORWEATHERS,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 21 C 3040 — **Joan H. Lefkow**, *Judge.*

ARGUED JANUARY 28, 2025 — DECIDED APRIL 3, 2025

Before HAMILTON, KIRSCH, and MALDONADO, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Ronald Norweathers was convicted by a jury and sentenced to 250 months' imprisonment for possessing and distributing child pornography. At trial, he attempted a last-ditch public authority defense: he testified that he believed he was acting at the behest of an FBI agent who misled him into collecting and forwarding child pornography as part of a nonexistent undercover operation. The jury

rejected his rather fantastic tale, and his post-trial motions and direct appeal were unsuccessful.

Norweathers then moved to vacate his conviction and sentence under 28 U.S.C. § 2255 on various grounds. Among them, he claimed his trial counsel was ineffective for failing to request an apparent authority or entrapment by estoppel jury instruction and for not calling as a witness the computer forensics expert that counsel had retained and consulted. The district court denied his motion without a hearing. On appeal, Norweathers renews his ineffective assistance of counsel claims and says the district court abused its discretion by denying his motion without a hearing. Neither argument has merit, so we affirm.

I

A

In September 2009, undercover FBI agents identified an individual trading and sharing child pornography. The subsequent investigation led to the execution of a search warrant at a business called 1-800-Radiator. There, agents found child pornography on the desktop and personal laptop of an employee named Ronald Norweathers. Norweathers was on supervised release for bank robbery and was a registered sex offender, previously convicted of indecent solicitation of a minor. During his initial FBI interview, Norweathers waived his *Miranda* rights and admitted to regularly viewing and trading child pornography, though he later said those statements were involuntary.

Agents obtained access to Norweathers's various online accounts (at first with permission and then later through a search warrant after Norweathers revoked consent). Agents

searched his personal email address and found two emails with attached images of child pornography that Norweathers had sent to other individuals. On August 4, 2009, Norweathers emailed another account four images, several of which depicted toddlers being sexually abused by adults.

On March 13, 2009, Norweathers sent an email to a second account, nomoreravens@aol.com, and attached a zip file containing 78 images. Almost all were child pornography, including graphic images of toddlers and prepubescent children engaged in sexually explicit activity. Nomoreravens replied to the email, "What did you send me?" and Norweathers answered, "A zip. Why? You like or no?" Nomoreravens responded, "I don't want kiddie porn, scary." Norweathers replied, "Well duh, pick through for the teen stuff. I sent how it came to me."

Norweathers was indicted on six counts of transportation of child pornography. Several charges relied on evidence from Norweathers's personal laptop and were dismissed because the laptop had been stolen from an agent's car after it was seized. The government then brought a superseding indictment charging Norweathers with three counts of transportation of child pornography (Counts 1, 2, and 3) and one count of possession (Count 4). The August 4 and March 13 emails formed the basis for Counts 2 and 3, respectively. The possession charge related to images found on Norweathers's hard drive during the subsequent search. The government eventually dismissed Count 1, and Counts 2 through 4 proceeded to trial.

Consistent with his pretrial motions, Norweathers's primary defense at trial disputed his identity as the individual who sent the emails in question. In response, the government

introduced an email exchange establishing Norweathers's identity, motive, and knowledge. In that conversation, Norweathers and another individual discussed in detail their desire to drug and rape children as young as four years old.

After the government rested its case-in-chief, Norweathers testified in his own defense. Just before, he informed his counsel for the first time, who in turn notified the court, that he intended to present a public authority defense. On the stand, Norweathers abandoned his identity defense wholesale and admitted to sending the March 13 and August 4 emails. Instead, he testified that he believed he was assisting an FBI agent named Joseph Bonsuk with an undercover investigation into child pornography distribution when he sent the emails.

Bonsuk was the owner of the nomoreravens@aol.com account and the other party to the March 13 email exchange. Norweathers said that he formed a relationship with Bonsuk in late 2008, supposedly to help root out distributors of child pornography. Norweathers testified that he had contacted his probation officer asking to be an informant because he noticed he had become a "magnet" for individuals interested in child pornography. On the stand, he claimed that child pornography disgusted him, but he was impeached on this point by a previous statement discussing his interest in it and his attraction to underage boys (as well as his conviction for attempting to have sex with a 14-year-old).

Norweathers admitted that his probation officer explicitly informed him that he could not serve as a government informant while on federal supervision. Nevertheless, Norweathers said he "went actively searching online to see if there was somebody [he] could either meet or maybe just give

anonymous tips." He testified that he met Bonsuk online, possibly in a chatroom, though he was unsure. Bonsuk purportedly told Norweathers he worked for the FBI and sent him a PDF on FBI letterhead verifying his employment. Norweathers said Bonsuk instructed him to speak with individuals who were harming children or sharing child pornography and to send Bonsuk everything on a weekly basis to facilitate his investigation. Norweathers claimed his stolen laptop contained the PDF and these exculpatory conversations with Bonsuk.

In reality, Bonsuk was not an FBI agent, but a clerical employee who was not authorized to handle confidential informants. When questioned about the plausibility of his claims, Norweathers admitted that he had never met Bonsuk in person or spoken with him by telephone. He acknowledged that Bonsuk's nomoreravens@aol.com account did not look like an official FBI email address. He testified that he had never spoken with Bonsuk through an official FBI email address and that they often communicated through instant message.

Norweathers further admitted that Bonsuk never told him specifically to send or receive child pornography images. Instead, Norweathers testified that it was implied he could send and receive child pornography if needed to gain access to other people as part of his investigation. When questioned about the conversation where Bonsuk said he did not want "kiddie porn, scary" and Norweathers instructed him to "pick through for the teen stuff," Norweathers explained that Bonsuk was investigating an individual interested in a "teenage variation" of child pornography. As far as the August 4 email and child pornography shared from a screen name belonging to him, Norweathers maintained that each was also to aid Bonsuk's investigation. He further testified that the child

pornography on his work computer was stored only in temporary cache files, consistent with someone forwarding them through a photo-sharing program without saving them to the computer.

Unsurprisingly, government witnesses from the FBI testified that Norweathers was never a cooperating source. They also confirmed that FBI agents and their confidential informants are not allowed to distribute child pornography. The government's evidence further suggested that Norweathers first learned about Bonsuk's connection to the FBI during discovery. As for Bonsuk's fate, the FBI conducted an internal investigation, discovered no connection between him and Norweathers, and declined to impose disciplinary action.

Despite the mounting evidence undermining his claims, Norweathers maintained that he had been "horribly misled" by Bonsuk into distributing child pornography. The parties agreed on the Seventh Circuit's pattern jury instruction on the public authority defense. At the end of trial, the jury was instructed:

> The defendant contends that he acted in reliance on public authority. A defendant who commits an offense in reliance on public authority does not act knowingly and should be found not guilty. To be found not guilty based on reliance on public authority, the defendant must prove that each of the following three things are more likely true than not true.
>
> First, an agent of the United States Government directed the defendant to engage in the

conduct charged against the defendant in Counts Two, Three, and Four;

This agent had the actual authority to grant authorization for the defendant to engage in this conduct; and

Three, in engaging in this conduct, the defendant reasonably relied on the agent's authorization.

In deciding this, you should consider all of the relevant circumstances, including the identity of the government official, what the official said to the defendant, and how closely the defendant followed any instructions the official gave.

The jury found Norweathers guilty on all counts. The district court denied Norweathers's post-trial motions for an acquittal or a new trial in the alternative and sentenced him to 250 months' imprisonment with lifetime supervised release. We affirmed his conviction on direct appeal. *United States v. Norweathers*, 895 F.3d 485, 492 (7th Cir. 2018).

## B

Norweathers then moved to have his sentence and conviction vacated under 28 U.S.C. § 2255. His pro se motion raised approximately 15 grounds of collateral attack. Two are relevant here. First, Norweathers claimed his trial counsel was ineffective for failing to request a public authority jury instruction allowing the government official to have only apparent authority or, alternatively, for failing to request an instruction on entrapment by estoppel. He said the pattern instruction prejudiced him because it required the official to have actual

authority, an insurmountable hurdle in his case given Bonsuk's position in the FBI.

Second, Norweathers said he received deficient representation because his counsel insufficiently consulted with and failed to call at trial a computer forensics expert retained for his defense. He complained that he was only allowed to meet with the expert once while all other communication with the expert was through counsel. According to Norweathers, counsel did not comprehend the technological issues and evidence in this case and therefore failed to appreciate the importance of the expert's testimony. Without it, Norweathers said his defense could not meaningfully rebut the government's evidence. His motion did not include any specific information about the expert's conclusions or proffered testimony. Instead, Norweathers discussed his own review of the evidence and personal conclusion that his computer had been tampered with and exculpatory evidence deleted.

The district court denied the § 2255 motion without holding an evidentiary hearing. It said that whether Norweathers received an apparent authority or entrapment by estoppel instruction was immaterial because his testimony failed to establish that his reliance on a government agent's authority was reasonable. Still, it granted a certificate of appealability on the issue. The court did not directly address the computer forensics expert argument, summarily dismissing it along with others that it deemed rambling, unfocused, not sufficiently cogent to suggest constitutional error, or otherwise not germane to a § 2255 motion. After Norweathers timely appealed, we expanded the certificate of appealability to include the additional claim that trial counsel was ineffective for failing to call the expert as a witness at trial.

II

Ineffective assistance of counsel claims may be brought in collateral proceedings under § 2255. *Massaro v. United States*, 538 U.S. 500, 509 (2003). To successfully challenge his conviction this way, Norweathers must establish that his legal representation was objectively deficient and he was prejudiced by this performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Our review of counsel's representation is "most deferential." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). We "apply a strong presumption" that it "was within the wide range of reasonable professional assistance." *Id.* at 104 (quotation omitted). This helps avoid the temptation to "second-guess counsel's assistance" after an unfavorable outcome. *Strickland*, 466 U.S. at 689. As for prejudice, Norweathers must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. This requires a "substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quotation omitted).

A

Norweathers first maintains that his counsel was ineffective for failing to request a jury instruction on apparent authority or entrapment by estoppel. Counsel may provide deficient representation by failing to object to a defective jury instruction. *Harden v. United States*, 986 F.3d 701, 705 (7th Cir. 2021). But mere agreement to an improper instruction is not enough: Norweathers must show that agreement prejudiced him in a way that "undermine[s] confidence in the verdict." *Id.* at 707.

At trial, Norweathers's attorney agreed to the pattern instruction on public authority. This required Norweathers to prove by a preponderance of the evidence that Bonsuk had actual authority to instruct him to distribute and possess child pornography. Of course, the evidence presented at trial made clear that Bonsuk lacked the authority to do this. Norweathers therefore argues that his trial counsel should have known to ask for an entrapment by estoppel instruction or a public authority instruction allowing acquittal based on Bonsuk's apparent authority.

The defenses of public authority and entrapment by estoppel are similar but have certain conceptual differences. *United States v. Stallworth*, 656 F.3d 721, 726 (7th Cir. 2011). The public authority defense is available to a defendant who engages in activity he "knows to be otherwise illegal but that has been authorized by the government." *Id.* at 726–27. The entrapment by estoppel defense applies when a government official leads a defendant to believe his conduct is legal. *Id.* at 727. In entrapment by estoppel cases, the government official may have actual or apparent authority to make those assurances. *Id.* By contrast, most circuits limit the public authority defense to situations in which the government official had actual, not merely apparent, authority to authorize the defendant's conduct.[*]

---

[*] *United States v. Holmquist*, 36 F.3d 154, 161 n.7 (1st Cir. 1994); *United States v. Giffen*, 473 F.3d 30, 39 (2d Cir. 2006); *United States v. Pitt*, 193 F.3d 751, 757–58 (3d Cir. 1999); *United States v. Fulcher*, 250 F.3d 244, 253–54 (4th Cir. 2001); *United States v. Hale*, 685 F.3d 522, 542 (5th Cir. 2012); *United States v. Theunick*, 651 F.3d 578, 589 (6th Cir. 2011); *United States v. Burrows*, 36 F.3d 875, 881–82 (9th Cir. 1994) (following *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.1 (11th Cir. 1994)); *United States v. Alvarado*, 808 F.3d 474, 484 (11th Cir. 2015). The Eighth and Tenth Circuits are

We have not decided this issue and decline to once again, because the similarities between the defenses guide our decision today. Both require "that a government official affirmatively communicate to the defendant that he is authorized to engage in certain conduct without incurring criminal liability." *Id.* at 726. And under either, the defendant must actually and reasonably rely on the government agent's authority (whether it be actual or apparent). *United States v. Baker*, 438 F.3d 749, 755 (7th Cir. 2006) (entrapment by estoppel); *United States v. Strahan*, 565 F.3d 1047, 1051 (7th Cir. 2009) (public authority). These are rare defenses, *Baker*, 438 F.3d at 753, and Norweathers is not the exceptional defendant who may avail himself of them.

First, Norweathers admitted at trial that Bonsuk never affirmatively instructed him to send or receive child pornography. This hobbles his argument straight out the gate, since both defenses require an affirmative communication by the government official sanctioning the conduct in question. *Stallworth*, 656 F.3d at 726. Genuine or not, Norweathers's belief that authorization was implied from the context of the so-called investigation does not suffice.

Second, supposing we suspend disbelief and credit Norweathers's story as true, his testimony belies any reasonable reliance on Bonsuk's representations. Norweathers himself sought Bonsuk out, met him online, and communicated with him solely via email and instant messaging. They never met in person or spoke on the phone. His email was nomoreravens@aol.com, which Norweathers admitted did not look like

undecided. *United States v. Xiong*, 914 F.3d 1154, 1160 (8th Cir. 2019); *United States v. Granado*, 501 F. App'x 820, 824 (10th Cir. 2012).

an official FBI account. Norweathers alleges to have the technological skills necessary to conduct in-depth forensics reviews of the evidence and make complex technical arguments—presumably he would know that anyone with a computer and word processing program could fabricate a document with FBI letterhead. And it goes without saying that his exchange with Bonsuk regarding "kiddie porn" was far from the kind of professional communication one would expect with a government official.

Further, Norweathers had been told he was ineligible to serve as a confidential source. He colors this as a mere technical violation of the terms of his supervised release. But the question remains: Why would it be reasonable for Norweathers to believe that he, as a convicted sex offender on supervised release, would be the FBI's legitimate choice for a confidential informant to expose child pornography distributors? Ultimately, even if Norweathers "somehow truly believed" that he was indeed a confidential informant, "this is unavailing, for reasonableness in this context is objective." *United States v. Neville*, 82 F.3d 750, 762 (7th Cir. 1996).

Norweathers's own testimony reveals his inability to prevail under an entrapment by estoppel defense or an apparent authority instruction. It is therefore immaterial whether the jury received these instructions, and the district court properly denied this claim.

B

We now turn to Norweathers's claim that he received ineffective assistance because counsel did not call the computer forensics expert at trial. He says the district court abused its discretion by rejecting his § 2255 motion without holding an

evidentiary hearing on this issue. Norweathers is entitled to a hearing if his § 2255 motion "alleges facts that, if proven, would entitle him to relief." *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994). But not every claim warrants one; district courts have "discretion to proceed to decision on a § 2255 motion without holding an evidentiary hearing." *Williams v. United States*, 879 F.3d 244, 248 (7th Cir. 2018). None is needed for allegations that are "vague, conclusory, or palpably incredible, rather than detailed and specific." *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) (quotation omitted).

Norweathers's motion did not allege detailed and specific facts entitling him to an evidentiary hearing. To be sure, it discussed various technical issues and included sporadic criticisms about how the government handled and preserved evidence. But the vast majority of these allegations were based on *his* review of the evidence and what *he* would testify to at a hearing. He made only two specific allegations regarding the expert, and neither is compelling. First, Norweathers complained that he only met with the expert once. Second, Norweathers said the lack of the expert's testimony at trial made it difficult to meaningfully cross-examine the government's witnesses and rebut its evidence.

This was not a situation where counsel failed to consult an expert needed for the defense, *Anderson v. United States*, 981 F.3d 565, 573–74 (7th Cir. 2020), insufficiently investigated a potentially exculpatory issue, *Dunn v. Jess*, 981 F.3d 582, 592 (7th Cir. 2020), or knowingly used an unqualified expert, *Hinton v. Alabama*, 571 U.S. 263, 275 (2014). Rather, counsel lobbied the court to retain and fund a computer forensics expert to investigate important technical issues and consulted with that expert. "[G]iven the evidence that counsel did consult an

expert, the decision not to call that expert 'is a paradigmatic example of the type of strategic choice that, when made after thorough investigation of the law and facts, is virtually unchallengeable.'" *Harden*, 986 F.3d at 707 (quoting *Hinton*, 571 U.S. at 275). The decision not to have this expert testify enjoys the presumption of a sound trial strategy, and Norweathers supplies no detailed and specific allegations to defeat that presumption.

Norweathers suggests that counsel did not call the expert as a witness because the technical evidence was beyond counsel's comprehension. But he admits that this is pure speculation, and "[s]uch speculation does not persuade us that an evidentiary hearing is needed." *Santiago v. Streeval*, 36 F.4th 700, 712 (7th Cir. 2022). His own uncertainty highlights the deficiency of his ineffective assistance of counsel claim: he has failed to allege a substantial, not just conceivable, likelihood of a different result.

Even if the expert's testimony would have enhanced Norweathers's credibility in certain areas (such as whether he stored child pornography on his computer or merely passed the images along), his "bizarre and preposterous" testimony was "far more damaging to his defense than any failure to call an expert to testify on his behalf." *United States v. Hatterman*, 853 F.2d 555, 559 (7th Cir. 1988). Because Norweathers's "own explanation of the chain of events leading to his indictment is fantastic," we cannot conclude that he was materially prejudiced by the decision not to present the expert witness. *Id.* Our confidence in the outcome of the trial is in no way undermined by counsel's performance, and the district court was

well within its discretion to deny this claim without an evidentiary hearing.

AFFIRMED